The opinion of the court was delivered by
Watkins, J.
Relators seek by mandamus to compel the respondents to comply with and perform their plain ministerial duties, which are designated in the Concurrent Resolution of the General Assembly, known as Act 182 of 1894, directing the Auditor to warrant, and the Treasurer to pay, the amounts claimed by them, out of the surplus interest fund of 1889.
Relators base their claims upon a contract made and entered into by them, with the Board of Liquidation, representing the State of Louisiana, on the 26th of December, 1886, and renewed on the 3d of June, 1888; whereby they engaged, as fiscal agents of the State, to cash and carry the coupons of all valid consolidated and constitutional bonds of the State, up to and including those falling due on the 1st of July, 1889, as specifically stipulated therein.
They aver, that under said contract, they respectively paid to the holders of interest coupons upon consolidated bonds of the State of Louisiana, which were presented to them for payment, each the sum of two thousand six hundred and sixteen dollars; which sums they are entitled to have reimbursed to them, respectively, “ by their “ principal, the State of Louisiana, for whose benefit and account “ the said sums were paid.”
They further aver, that there remains in the hands of the respondent State Treasurer an unexpended balance exceeding ten thousand dollars of the amount of the appropriation made by the *1681 general revenue act of the year 1888, being Act 48 of that year, to pay interest coupons of the State of Louisiana, which became due on the first of January and the first day of July, 1889.
That such unexpended balance is in law applicable to the reimbursement of the aforesaid sums by them paid, as fiscal agents of the State; that there is no other appropriation of said balance.
That by concurrent resolution No. 182 of the General Assembly of 1894 the respondent Auditor is directed to warrant for, and the respondent Treasurer is directed to pay them, respectively, the aforesaid sums; and in violation and disregard of their duties therein specified, said respondents have refused and declined, the one to issue his warrant and the other to make payment to them, of the aforesaid sums, as it is their plain ministerial duty to do.
Therefore relators complain, and pray for a peremptory mandamus to compel respondents’ performance of duty.
Respondents, represented by the Attorney General, represent that the claims of relators are for the payment of certain coupons No. 31, due July, 1889, as shown by the list thereof furnished by relators to the Auditor. That said coupons were clipped from consolidated bonds which the State did not owe, which are null and void, and which should have been destroyed by the direction of the Constitution and the law, but which were fraudulently and illegally put upon the market by a former Treasurer of the State. That the bonds from which said coupons were clipped belonged, some to the Agricultural and Mechanical College and some to the Seminary fund; and some had been received in exchange for constitutional bonds. That the said bonds belonging to the Agricultural and Mechanical fund, were declared null and void after the 1st of January, 1880, and the General Assembly was prohibited from ever making any provision for payment, and was ordered to destroy the same by Art. 233 of the Constitution; that as the coupon is a part of the bond, the State does not owe it, and the Legislature is prohibited from paying it, and therefore concurrent resolution 182 of 1894 is null and void, as in violation of the Constitution, as well as Act 48 of 1888, in so far as it may be held to make appropriation to pay those invalid coupons; that the obligation of the State evidenced by those bonds was extinguished by that exchange, and neither the treasurer nor any other person had or has the legal power to revive that obligation by an illegal reissue of the bonds; that therefore the State does not *1682 owe said bonds or coupons, and the Legislature is without power to pay them, and respondents have no right to pay them; that the appropriation made by Act 48 of 1888 to pay interest coupons was only to pay coupons clipped from valid and legally outstanding bonds, and not fi’om bonds illegally and fraudulently issued or put in circulation; that the surplus fund remaining in the treasury left from said appropriation after paying all valid coupons of the year must be used by the board of liquidation in buying up valid consolidated bonds, and can not be used to pay interest on fraudulent bonds; that as the State does not owe interest on these bonds the payment of these coupons would be a gratuity which the Legislature can not make; that the concurrent resolution, Act 182 of 1894, is a disguised appropriation, and the Legislature can not appropriate money by concurrent resolution; but such an appropriation as this, if within the legislative power, would have to be made by two separate bills, introduced after thirty days’ proper advertisement, and passed in the regular way, and after all constitutional delays and requirements had been complied with, whereas the concurrent resolution 182 of 1894 was passed as a single resolution, without any of these formalities or delays.
On the trial the evidence showed that relators had paid and expended the sum of money claimed in satisfaction and discharge of coupons clipped from that species of bonds known as Agricultural and Mechanical College bonds in greater part, and that same were those falling due on the 1st of July, 1889, and which were duly presented to them as fiscal agents of the State of Louisiana for payment by the holders thereof in the due course of business and in pursuance of their contract with the State.
It was admitted by the Attorney General, on behalf of the respondent, that there is money enough in the interest fund of 1889, appropriated by Act 48 of 1888, to cover the amounts claimed by re - lators.
It is shown that due and proper demand was made of respondents for compliance with the provisions of concurrent resolution 182 of 1894 without avail.
The Attorney General introduced in evidence the joint report of the Auditor and Treasurer containing a list of consolidated and constitutional bonds as classified by the New Orleans Stock Exchange; other evidence conforming to the averments of the respondents’ an *1683 swer — particularly, extracts from the published journals of the Senate and House of Representatives, of the session of 1894, showing the course of the legislative proceedings in the introduction and passage of House concurrent resolution No. 27, and which bears the the number 182 in the published acts of 1894. The record contains the following admission of counsel pro and con, viz.:
“It is hereby admitted that the coupons sued upon were clipped from the bonds illegally issued by the Treasurer; that they became due on July 1, 1889, and were paid on that date by the relators’ banks without any notice or knowledge that they were fraudulent, (they being) fiscal agents of the State, on date of their presentation. That similar coupons clipped from some bonds had been paid •on presentation by the fiscal agents, on the first of January and July of each year, from the time they were put in circulation up to and •including the coupon due 1st of July, 1889, up to that time there having been no suspicion of fraud, and all of said payments having been allowed by the Auditor and Treasurer in settlements made with the fiscal agents. That after these coupons were paid b/ relators, the fraudulent issue of the bonds was discovered in September, 1889, and they were not allowed credit therefor in their settlement with ■the Treasurer.”
The language of the concurrent resolution 182 of 1894 is as follows, viz.:
No. 182.]
concurrent resolution
Authorizing and directing the Auditor to warrant for, in favor of, the Louisiana National Bank and the New Orleans Oanal and Banking Company, both of the city of New Orleans, and the Treasurer to pay said banks the amount of certain interest coupons, paid by the said banks as fiscal agents of the State of Louisiana, on July 1, 1889.
Whereas, In the year 1889 the Louisiana National Bank and New Orleans Cajal and Banking Company, both of the city of New Orleans, were fiscal agents for the State of Louisiana; and
Whereas, In such capacity as fiscal agents the said banks paid to the holders thereof certain interest coupons *1684 of certain consolidated bonds of the State of Louisiana,, maturing July 1, 1889; and
Whereas, The bonds from which said coupons had' been detached were subsequently ascertained to be the property of the State of Louisiana, and which had fraudulently been put in circulation by E. A. Burke, then-Treasurer of the State of Louisiana; and
Whereas, There remains in the hands of the State-Treasurer a balance of appropriations made by the Legislature of 1888, to pay the interest upon the consolidated-bonds of the State of Louisiana;
Appropriation the Louisiana Natiouai Bank and the New Orleans Canal Bank.
Therefore be it resolved, by the Senate of the State of Louisiana, the House of Representatives concurring therein, That the Auditor is authorized and directed to ’ warrant in favor of the said Louisiana National Bank for the sum of two thousand six hundred and sixteen dollars, ’ and the said New Orleans Canal and Banking Company for the sum of two thousand six hundred and sixteen-dollars, being the respective sums paid by them as fiscal agents as aforesaid, upon any unexpended balance in the hands of the State Treasurer, of the appropriation made for the payment of interest upon the consolidated bonds of the State of Louisiana, by the Legislature of 1888; and the Treasurer is hereby authorized and directed to pay said banks the said sums in the usual course.
G. W. BOLTON,
Speaker of the House of Representatives.
H. R. LOTT,

President Pro Tempore of the Senate.

On this statement of the issues raised, we have three questions for consideration, to-wit:
First. Whether it was within the competency of the Legislature to appropriate, or apply money from the State treasury, to the reimbursement of the relators’ claims, for money expended in the payment of the interest coupons, taken from the consolidated bonds, of the denomination of Mechanical and Agricultural College bonds, and from constitutional bonds, which matured on the 1st of July, 1889.
*1685 Second. Whether, in fact, concurrent resolution 182 of 1894 was not an-act of appropriation, in disguise, and enacted without observance of constitutional forms and legal requirement, and therefore absolutely null, and without legal effect.
Third. Whether the unexpended balance in the State treasury, resulting from the general appropriation act of 1888, can be reached and controlled by concurrent resolution 182 of 1894; or is same by law dedicated to the Board of Liquidation for the purchase of outstanding valid constitutional bonds of the State.
I.
This is not a suit against the State.
It is a mandamus proceeding undertaken by relators, as the quondam fiscal agents of the State, for the purpose of coercing the performance of an alleged ministerial duty which a concurrent resolution of the General Assembly has imposed upon the respondents as executive officers of the State government. In such a proceeding the State can not he said to have been sued. She could not be sued without special legislative permission.
In State ex rel. McEnery vs. Nicholls, Governor, 42 An. 209, we said that “a mandamus against the register of the State land office, to coerce his performance of duties purely ministerial, is not a suit against the State. Mandamus will go to the auditor, treasurer or register of the land office of the State, in appropriate cases.”
In State ex rel. Collens vs. Jumel, 30 An. 863, our predecessors said:
“The State is sovereign, and can not be sued by her citizens, in her own courts, without her permission; but a civil proceeding by which one officer of the State seeks to compel another officer of the same State to perform a ministerial duty is not, in the proper sense of the words, a suit against the State.
“ Nothing is more common than for a party who has a claim “ against the State, whether for salary as an officer, or for money “ due on other accounts, to have his right to payment adjudicated “ through and by means of a mandamus against the auditing officer.
“ It is recognized by us as a legitimate mode of ascertaining what “ are the rights of persons who have or who prefer claims against “ the State.” State ex rel. Ecuyer vs. Treasurer, 33 An. 969; State ex rel. Campbell vs. Auditor, 37 An. 353; State ex rel. Mentz vs. *1686 Auditor, 28 An. 47; State ex rel. Printing Company vs. Auditor, 28 An. 72.
Those decisions are in line with those of the Supreme Court of the United States. Marbury vs. Madison, 1 Cranch, 137; Kendall vs. United States, 12 Peters, 608; Board of Liquidation vs. McComb, 92 U. S. 541.
The principles announced in those decisions are in strict keeping with the relief demanded by the relators in the instant case.
Exactly the converse of the foregoing proposition is announced in State ex rel. Hope & Co. vs. The Board of Liquidation, 42 An. 647.
In that case we held:
“ Whenever, by the Constitution and laws of a Stnte, officers of “ .the executive branch of the government are vested with discre- “ tionary powers and functions in the performance of civil duties or “ when political powers and responsibilities are devolved upon “ them they are not amenable to judicial process; in such case their “ acts are only politically examinable.”
The relators have brought themselves strictly within the principles announced in the Collins case — their demands being predicated upon claims for moneys expended for account and in pursuance of their contract with the Board of Liquidation, and their right to mandamus depending upon the terms of Act 182 of 1894.
In State ex rel. Campbell vs. Steele, Auditor, supra, relator asserted a claim against the State, to meet which the legislature had made an appropriation, directing its payment out of any money in the treasury not appropriated; and complained that the auditor had declined to issue his warrants on the treasury therefor — the latter denying his right to issue such warrant, and offering the relator his warrant on the general fund.
The court, when speaking of the legislative act, said:
“ It was passed while there was enough money in the treasury to pay it, and before any appropriation of it to any other object, to prevent or impair its payment.
“The general assembly, most probably, understood the exact condition of this fund then, and employed the language used in the act to cause its application to the admitted indebtedness.
“The words of the act are entirely sufficient to accomplish this end, by charging that fund and any other fund inexistence with a reserve for that purpose.
*1687 “The Legislature did not propose to postpone the payment oí the claim. They contemplated to have it paid from any money in the treasury which had not been previously specifically destined, set apart or appropriated for another object.”
While it was made the general duty of the auditor to examine, audit and settle all claims which are presented against the State, and payable out of the treasury, and to that end it is made his duty to examine all the evidence in support thereof before issuing his warrant therefor, yet the act on which relator’s suit is predicated in terms declares that they respectively paid and expended the sums claimed while acting in the capacity of fiscal agents of the State, in pursuance of their respective contracts, in paying “ coupons of certain consolidated bonds of the State of Louisiana maturing July 1, 1889, and that the bonds from which said coupons had been detached were subsequently ascertained to be the property of the State of Louisiana, and which had fraudulently been put in circulation by E. A. Burke, then treasurer of the State of Louisiana.” ' And, having made this statement of fact, the act further declares “ that the auditor is hereby authorized and directed to warrant” in their favor for said sums, “ upon any unexpended balance in the hands of the State treasurer of the appropriation made for the paymient of interest upon the consolidated bonds of the State of Louisiana by the legislature of 1888; and the treasurer is hereby authorized and directed to pay said banks the said sums in the usual .course.”
So it is clear that the facts are found, and the duty is imposed by the legislature, thus dispensing the auditor from the performance of the general duty of examining the facts upon which relator’s claims are founded.
In People ex rel. Cromwell vs. Commissioners, 36 Barbour, 177, it was held “ that the courts have nothing to do with the correctness or incorrectness of the legislative opinion, and must assume the fact to be as the legislature assume or admit it to be.”
In Bank vs. Fenno, 8 Wallace, 553, it was said that “ the motive of the legislature in passing a law can not be inquired into by the courts. ’ ’
Judge Cooley declares it to be the consensus of the best judicial opinion “ that a statute is assumed to be valid until some one complains whose rights it invades. Cooley’s Con. Lim., pp. 163, 188.
*1688 In Lusher vs. Scites, 4 W. Va. 11, it was decided that the courts ean not go into’ an inquiry as to the truth or falsity of facts upon which an act of the legislature is predicated.
It becomes manifest, therefore, that the discretion of the auditor in the premises was eliminated from the case and the purely ministerial function of issuing his warrant preserved. High’s Ex. Lega* Rem., Secs. 101, 104. That, in this respect, the ministerial duty which is imposed upon the auditor is likewise imposed upon the treasurer. Now, in State ex rel. Hommerich vs. Hunter, treasurer, 14 An. 221, it was stated that the respondent “ refused to pay the warrants on the ground amongst other’s that from his construction of Act No. 143 of 1859 the money claimed by these warrants was not due ” the relator; but the court held that he had no such power under the law, and said that “ the payment of the warrants was a ministerial duty imposed upon the treasurer.” (Our italics.)
And in the course of their argument on the respondents’ pretensions they said:
“ Such an argument, if legitimate, would justify the interference of public officers with the peculiar functions appropriated to each, and would produce such collisions in the administration of public affairs as to materially impede the proper and necessary operations of government.”
Accepting this as the true doctrine, applicable to executive officers of the State government, is it not applicable with much greater force to an attempted invasion of the prerogative of the legislature?
If an act of the legislature has, formally and in terms, declared that certain claims against' the State are just and well-founded and ordered the auditor to warrant on the treasury therefor, and the treasurer to pay same can either question the authority of the general assembly or go behind the act and inquire into the evidence on which such claims are based or the constitutionality of the act.
Whilst, under the peculiar circumstances of the case, we entertained the charge of uneonstitutionality in the act of the legislature which was raised by the secretary of state, as relator in the case of State ex rel. Morris vs. Secretary of State, 43 An. (at page 647), yet we safeguarded it in this way:
“We may state, as a preliminary to the discussion of the remaining issues in the return, that the right of the secretary of State to *1689 raise such issues for judicial determination as prerequisite to granting relief by mandamus compelling him to publish the proposed amendment is very questionable indeed. But we are indisposed to hamper and circumscribe any remedies the respondent thinks himself entitled to, and will underbake the investigation of the issues raised only for the purpose of determining whether the alleged invalidities in the confection of the proposed amendment, and its alleged illegal and unconstitutional features, are so glaring and patent as to furnish the secretary of State just grounds of refusal to publish it.” .
From the foregoing it is quite clear that this charge of unconstitutionality and illegality of an act of the legislature can not be regarded as a precedent justifying its application in ordinary cases like this.
In State ex rel. Nicholls, Governor, vs. Shakspeare, Mayor, 41 An. 156, this question arose and was expressly decided, the court holding that -‘laws are presumed to be constitutional until the contrary is judicially established; and they must be executed by the officers upon whom they impose the duty of doing so, who have no authority to resist the execution thereof on the ground that they contravene the constitution.”
Again:
“ Therefore, when the judiciary, whose duties are to pass upon the constitutionality of an act, is so careful and conservative in its deliberations before passing judgment as to its validity, it seems but reasonable to require, in a well-constituted government, obedience to it by officers who are to execute it until its constitutionality is passed upon by the judiciary.”
In Bassett vs. Barbin, 11 An. 672, the old court said:
“ It was probably in the contemplation of the legislature that the duty would be performed by the sheriff in office at the time of the promulgation of the law, but it surely was never intended that that functionary could nullify the law by neglecting or refusing to execute it. ’ ’
In State ex rel. Hall vs. Judge, 33 An. 1222, it was held that the judge of the district court has no right to refuse leave to the district attorney to file an information on the ground that, in his opinion, the statute under which the prosecution is instituted is unconstitu *1690 tional. That it was “'a matter of defence exclusively within the discretion of the accused, who can urge it in arrest of judgment.”
In Fisher vs. Steele, Auditor, and Burke, Treasurer, 39 An. 447 the court, after quoting from Cooley’s Constitutional Limitations, one of the extracts made below, said: ■
“ That principle is suggestive of a grave doubt of the right of plaintiff in this case to assail the constitutionality of the statute under discussion,” etc.
In State ex rel. Board vs. Jumel, Auditor, 32 An. 60, it was held that the auditor can not be compelled by a, mandamus to levy a certain, tax, even though an act of the legislature made it his express duty to do so, when it appears that his doing so would be in disregard of a final decision of the Supreme Oourt pronouncing the act unconstitutional and in direct contravention of a subsequent act of the legislature.
In State ex rel. Macaulay vs. Clinton, Auditor, 27 An. 429, it was held that in a mandamus proceeding, the question whether the State, by her legislation on the subject, has impaired the obligations of her contract with the relator, is a matter that can not be decided in this controversy, because the State is not a party to the suit, and the auditor has no interest in the solution of the question.
The same observation is applicable to other constitutional objections raised by the relator.
This decision, and others of its kind, is well illustrated by that in The State vs. Judge of the Fifth Judicial District, 5 An. 756, where the act of the legislature providing for the trial of causes in which a district judge shall be recused by the judge of an adjoining district, was alleged to be unconstitutional by the respondent, and held to be valid by the court — it being a question in which the judge had an interest, and which was a necessary issue to be disposed of. In that case the judge was called upon to test the constitutionality of the law as a matter of defence.
We have thought it advisable, owing to the great importance of the question, to go over the jurisprudence of other states, and we have examined all the cases within our reach, and have made the following extracts therefrom as the result of that examination:
In State ex rel. Bloxam vs. Secretary of State, 13 Fla. 55, it was held that an act of the Legislature repealing the law imposing the duty on respondent, pending trial, without saving the proceedings having *1691 been called to the attention of the court, the power was gone, and the proceedings must be dismissed.
In State ex rel. Moody vs. Barnes, Comptroller, 25 Fla. 298, it was said that while it is not ordinarily a case calling for mandamus “ because respondent went out of the way to exercise his discretion on a question not properly within it, or because he gave a reason, if a wrong one, for his decision, on a question to which its.discretion did not reach;” yet, “ in either case, we have seen that mandamus has been allowed.”
In State vs. Lafayette Co., 41 Mo. 221, the writ was granted against the county court to give relief against abuse and oppression.
In Nelson vs. Edwards, 55 Texas, 389, it was held that mandamus should go “ because the commissioners went outside of their discretion in at all considering the controversy between the parties as to which of the two was entitled to the office.”
In Guilick vs. New, 14 Indiana, 93, the writ was granted on the ground that the clerk, whose duty it was to approve sheriff’s bonds, refused “because another was in the office claiming it.”
The situation was the same in Case vs. Pritchett, 1 Spencer, 134; also in Beck vs. Jackson, 43 Mo. 117. In Daniel vs. Miller, 8 Colorado, 542, the writ went to the clerk of court, “ because he refused to approve an appeal bond, on the ground that the court held that appeal did not lie.” In State ex rel. vs. Lewis, 50 Ohio St. 128, the writ issued because “ the officers to approve sheriff’s bond refused, because, in their opinion, the bond was not presented within the time for approval required by law.
In Mobile, etc., vs. Cleveland, 76 Ala., it was issued to the clerk because “ he refused to approve an attachment bond, because the sureties were non-residents of the county — the law requiring sureties to be resident of the county,” etc.
In State ex rel. Moody vs. Comptroller, supra, the court, after reviewing and analyzing many cases, said:
“ These cases resting on mistake of law, it is important to observe “ that it was law not connected with the sufficiency of the bond, as “ to its form, legality and sureties; and therefore laid outside of the “ discretion given for the approval of bonds, * * Courts only ‘ ‘ check the exercise of discretion when assumed in regard to mat- “ ters not properly within it, or when mistake is made in law not “ germane to the discussion ” (p. 308).
*1692 In Franklin & Co. vs. State ex rel. Patten, 20 American and English Corp. Cases 60, the Florida court say:
“ No* only is it true that a court will not, as a general rule, pass “ upon a constitutional question, and decide a statute to be involved “ unless a decision upon that very point becomes necessary, but it “ is also a rule that a court will not listen to an objection made to “ the constitutionality of a statute by a party whose rights it does “ not affect, and who has, therefore, no interest in defeating it.”
In Jones vs. Block, 48 Alabama, 540, the court say:
“ A party who seeks to have an act of the legislature declared u Unconstitutional must not only show that he is or will be injured “ by it, but he must also show how and in what respect he is, or will “ be, injured and prejudiced by it.” Injury will not be presumed; it “ must be shown.”
In Turnpike Corp. vs. County of Norfolk, 6 Allen 360, the Massachusetts court held that the validity of a statute can be called in question only by those having a direct interest in the rights supposed to be injurioiisiy affected by its provisions.
In People vs. Railroad Company, 15 Wendell, 113, where the attorney general filed an information in the nature of a quo wurranto to contest respondents’ right to build a bridge across the Hudson river, it was held that the constitutionality of the legislative act authorizing its construction “can not be called in question oy the people, but that individuals alleging themselves to be injured thereby can alone raise the question.” Smith vs. McCarthy, 56 Penn. St. 359; Marshall vs. Donovan, 10 Bush. 681; Williamson vs. Carleton, 51 Maine, 449; Dyarnitt vs. Mayner, 23 Miss. 600; State vs. Hill, 10 Neb. 38; Howard vs. McDearmid, 26 Ark. 100.
In Van Horn vs. State ex rel. Abbott, 64 N. W. Rep. 365, the Nebraska court said:
“But the courts themselves will enforce a statute, unless it is clearly repugnant to the Constitution, and in discharging the functions of their offices ministerial officers should of course exercise the greatest caution on such questions.
“A doubt as to the validity of a statute would not justify them in disregarding it.
“ The peace of the community, the orderly conduct of government, require that only in clear cases of unconstitut.onality should they refuse obedience to legislative acts.
*1693 “They always disregard those at their peril.”
In State vs. Douglass, 18 Nebraska, 506 (26 N. W. Rep. 315), it was held that on an application for mandamus against county commissioners to compel them to call an election “ the court would not, in that proceeding, determine whether or not the act was in contravention of the constitution.” State vs. Stephenson, 25 N. W. Rep. 585; State vs. Moore, 40 Neb. 854.
In the People ex rel. Attorney General vs. Solamon, 54 Illinois, 39, it was held that “ a ministerial officer can not be allowed to decide upon the validity of a law and thus exempt himself from responsibility for disobedience to the command of a peremptory mandamus, his disobedience to the law being the cause of his inability to ocey the command of the court. It is the duty of a ministerial officer to obey the act of the legislature directing his'action, not to question or decide upon its validity.”
Again:
“ To allow a ministerial officer to decide upon the validity of a law would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all othe like officers may do the same, and thus an end be put to civil government, one of whose cardinal principles is subjection to the laws.”
In Wellington vs. Petitioner, 16 Pickering, 96, it was said by the court:
“Prima facie and on the face of the statute itself nothing will generally appear to show that the act is not valid, and it is only when some person attempts to resist its operation and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained.
“ Respect for the legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only, and it follows as a necessary legal inference from the position, that the ground of avoidance can be taken advantage of only by those who have a right to question the validity of the act, and not by strangers.” Matter of Albany St., 11 Wendell, 149; Williamson vs. Carlton, 51 Maine, 449; State vs. Rich, 20 Mississippi, 393.
Cooley again declares:
“The constitutionality of a law, then, is to be presumed because *1694 the legislature, which was first required to pass upon the question, acting, as they must be deemed to have acted, with integrity, and with a great desire to keep within the restrictions laid by the constitution upon their action, have adjudged that it is so.
“ They are a co-ordinate department of government with the judiciary, vested with very high and responsible duties, as to some of which their acts are not subject to judicial scrutiny; and they legislate under the solemnity of an official oath, which it is not to be supposed they will disregard.
“It must, therefore, be supposed that their own doubts of the constitutionality of their own action have been deliberately solved in its favor; so that the courts may, with some confidence, repose upon their conclusion, as one based upon the best judgment.” Oooley Oon. Lim., p. 183. <
Again:
“ The courts must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the legislature when the act was passed; and, if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to suchfinding.” Ibid., p. 186; Domere vs. Cogley, 8 Blackf. 177; Magruder vs. Magruder, 1 Blackf. 352.
Oooley again says:
“ When a statute is adjudged to be unconstitutional it is as if it had never been.
“Rights cau not be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it; and no one can be punished for having refused obedience to it before the decision was made.” Ibid., p. 187.
The Judiciary are “the rightful expositors of the laws.” Bank vs. Dudley’s Lessee, 2 Peters, 492; Dodge vs. Woolsey, 18 Howard, 331.
In the case of Marbury vs. Madison, Secretary of State, 1 Cranch, 137, mandamus was resorted to for the purpose of compelling the respondennt to deliver a commission which had been signed by the President to relator as a justice of the peace, and the principal question was as .to the constitutionality of the law which imposed the duty on the respondent.
*1695 There was no discussion as to the right of the secretary to raise the question, for the question was raised by the court and they said:
“ In some cases, then, the constitution must be looked into by the judges. And if they can open it at all, what part of it are they' forbidden to read or to obey?” P. 179.
In Board of Liquidation vs. McComb, 92 U. S. 531, Justice Bradley as the organ of the court said:
“In either case if the officer plead the authority of an unconstitutional law for the performance or violation of his dnty it will not prevent the issuing of the writ of mandamus.”
In Huntington vs. Worthen, 120 U. S. 97, the authority of the board of railroad commissioners to raise the question of the unconstitutionality of the law was not mooted or discussed. The court said:'
“ An unconstitutional act is not a law; it binds no one, and protects no one. Here the conflict between the constitution and the statute was obvious, and the board had the advice of the highest legal officer of the State; and his construction was sustained by the judgment of the Supreme Oourt of the State.”
This was an exceptional situation.
Norton vs. Shelby County, 118 U. S. 425, was an ordinary common law action of debt, and the question of the constitutionality of a law was directly involved as a part of the case.
Poindexter vs. Greenhow, 114 U. S. 270, was an action for the recovery of personal property, and the constitutionality of the law was properly an issue.
In Sessums vs. Botts, 34 Texas, 335, it was held that from the date of the enactment of a law until it was adjudged unconstitutional by that court, it had the force and effect of law, so far as to protect ministerial officers in obeying its mandates; and that it is advisable for all good citizens to obey whatever the law-making power shall promulgate as law until it shall be adjudicated by the judicial tribunals not to be law.
We have not only gone over all of the foregoing cases, and examined them with care, but we have likewise examined a great many others; those not cited were found, in our opinion, inapplicable to the present controversy, because only private rights were litigated between individuals, and the constitutional questions were properly raised and decided.
*1696 In mandamus proceedings against a public officer, involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute, and the ministerial character of the duty he is charged to perform.
After a careful investigation of the authorities, we feel fully confirmed in the correctness of the conclusions we arrived at in Nicholls, Governor, vs. Shakspeare, Mayor, and other cases, to the effect that executive officers of the State government have no authority to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the Constitution.
Laws are presumed to be, and must be treated and acted upon by subordinate executive functionaries as constitutional and legal, until their unconstitutionality or illegality has been judicially established, for, in all well regulated government, obedience to its laws by executive officers is absolutely essential, and of paramount importance.
Were it not so the most inextricable confusion would inevitably result, and “ produce such collisions in the administration of public affairs as to materially impede the proper and necessary operations of the government.”
“It was surely never intended that an executive functionary should nullify a law by neglecting or refusing to execute it.”
The result of this conclusion is, that the respondents are without right to urge the unconstitutionality of the concurrent resolution which is involved.
II.
With regard to the second question which is presented by the return — whether, in point of fact, the concurrent resolution of 1894 was not an act of appropriation in disguise, enacted without observance of the forms of law, and therefore absolutely void and without legal effect we are of opinion that it rests upon a different footing.
The auditor is in duty bound to exercise proper watchfulness and care in the performance of his arduous and responsible duties. In dealing with legislative appropriations he must necessarily examine the laws making the same, and should his'judgment suggest that any act was wholly irregular, it would be his duty to pause in issuing his warrants thereunder until its validity had been judicially ascertained. This is a pai’t of his official duty, and this court will assume that he has acted with due circumspection and not arbitrarily or captiously.
*1697 Looking into the facts which we have detailed supra, we find that this contention is not well grounded, for, inter alios, it was admitted by the attorney general that there is money enough in the interest fund of 1889 to cover the amount claimed by the relators.
Hence the funds under consideration had been already appropriated long prior to the passage of the joint resolution of 1894, and the general assembly merely dealt with an existing surplus of the money which had been theretofore dedicated to the interest fund. In this light the legislative purpose and object were to make this surplus applicable to the claims of relators, and the concurrent resolution was the means adopted for that purpose.
In State ex rel. Fisher vs. Steele, Auditor, and Burke, Treasurer, 39 Am. 447, it was held that any balance remaining to the credit of one or more of the separate funds created by law, after the satisfaction of all the warrants drawn against the same, is the property of the State, with full power in the legislature to apply the same to any lawful purpose under the constitution.
In our opinion that decision is correct and it is conclusively against respondents’ contention.
Ill
In view of the authorities cited and the opinion we entertain of the right of the respondents to raise the question of the constitutionality of the law, it is needless for us to examine the question of the sufficiency of the evidence on which the legislature acted. We believe it to be obligatory upon us to coerce the respondents to perform the ministerial function imposed by the concurrent resolution upon them respectively, and leave the evidence upon which they acted without comment, and the constitutionality of the law to future determination.
In so far as concerns the question of the unexpended balance resulting from the general appropriation of 1888 having been dedicated to the board of liquidation for the purpose of purchasing outstanding consolidation bonds, and consequently beyond the control of the general assembly at the time of the passage of the concurrent resolution, it is sufficient to say that we must act on the evidence in this record; and it shows by the respondents’ admissions that there is sufficient money in the interest fund of 1889, appropriated by said resolution, to cover the relators’ claims.
*1698 Whether the board of liquidation has any prior or better claim thereto than the relators does not appear from the evidence. At all events, the board of liquidation has not been made a party and its rights can not be determined here; and they will not, of course, be interfered with by our decree.
The judgment of the court below was in favor of the relators and it is affirmed.
Miller, J., recused.