84 So.2d 199

Mrs. Emma Lou Joffrion DORE

v.

A. P. TUGWELL, Treasurer of the State of
Louisiana et al.

Mrs. Lettie Horn BURGESS

v.

Allison R. KOLB, Auditor of the State of
Louisiana et al.

Nos. 42426, 42427.

Nov. 7, 1955.

Rehearing Denied Dec. 12, 1955.

Fred S. LeBlanc, Atty. Gen., W. C. Perrault, First Asst. Atty. Gen., Carroll Buck, Second Asst. Atty. Gen., Percy J. Landry, Jr., Sp. Asst. Atty. Gen., for defendants-appellants.

Frank S. Craig, Jr., White & May, Benton & Moseley, Baton Rouge, for plaintiffs-appellees.

McCALEB, Justice.

The widows of two judges are seeking in these proceedings the issuance of writs of mandamus ordering the State Auditor and State Treasurer to approve their applications for, and to pay to each of them, a widow's pension to which they assert they are entitled under the provisions of Act 697 of 1954, R.S. 13:5.

Judge Hugo Dore died on April 28, 1953, at the age of 63. At that time, he was Senior Judge of the Court of Appeal, First Circuit, having served continuously as a member of that court since 1935. The term he was serving at the time of his death does not expire until 1962 and, if he had lived, he would have been eligible in 1955 for retirement under the provisions of Section 8 of Article VII of the Constitution, as he would have reached the age of 65 and would have completed more than 20 years of service as a Judge of a court of record. Judge Dore's widow was married to her late husband in 1914 and resided with him continuously until his death.

Judge Hal A. Burgess died on January 19, 1947, while serving as a Judge of the Eleventh Judicial District Court. He had been elected to that office in 1924 and served continuously until the time of his death. Had he lived to the end of the term for which he was elected in 1942, he would have been eligible for retirement under Section 8 of Article VII of the Constitution since he would have then completed more than 23 years of continuous service as a Judge of a court of record. Mrs. Burgess married her late husband in 1914 and lived with him continuously until his death.

Following the enactment of Act 697 of 1954, which provides for the payment of a pension to the spouses of deceased judges possessing certain qualifications for eligibility, petitioners filed applications with the proper state officials for the benefits therein provided. The applications were refused on the ground that petitioners were ineligible under the terms of the Act. Hence these suits.

The respondents concede the facts, as above stated, but assert that they should not be required to recognize the claim of petitioners for two reasons: (1) that Act 697 of 1954 is unconstitutional, being violative of Sections 3 and 12 of Article IV and Section 8 of Article VII of the State Constitution, as amended, and (2), alternatively, should it be held otherwise, petitioners are ineligible under the provisions of the Act for the benefits therein granted.

After a hearing in the district court, where the cases were consolidated for purposes of trial, the alternative writs of mandamus theretofore issued were made peremptory and respondents were ordered to comply with petitioners' demands. Respondents have appealed from the adverse judgments, reasserting in this court the contentions made below.

Before scrutinizing respondents' plea of unconstitutionality, we must initially determine whether these State Officers, charged merely with the performance of ministerial duties in relation to the statute, have any interest or right to challenge its validity. Petitioners objected in the district court to the consideration of the plea of unconstitutionality, citing State ex rel. New Orleans Canal & Banking Co. v. Heard, 47 La.Ann. 1679, 18 So. 746, 47 L.R.A. 512, as authority for their position. The

Judge thought the point well taken but, nevertheless, as a matter of precaution, examined respondents' contentions and held the statute constitutional.

The Heard case, which represents the majority view in this country, enunciates the general rule [1] that a public officer, charged with statutory duties of a ministerial character, is without interest or right to question the constitutionality of the statute affecting or prescribing such duties as a defense to a mandamus proceeding to compel their performance. See Annotation 129 A.L.R. 941, supplementing 30 A.L.R. 378, and cases there cited. This doctrine is founded in the basic tenet that, forasmuch as legislative acts are entitled to great respect and are presumptively constitutional, it would be inimical to public policy to allow a party without interest in a statute, and who is not injuriously affected by its enforcement, to assail its validity. City of New Orleans v. Dameron, 149 La. 535, 89 So. 685.

The respondents profess that the holding in the Heard case was prompted by the peculiar facts therein under consideration and, hence, is inapplicable here. Furthermore, they declare that that decision has not been approved in the later jurisprudence on the subject, the case of State ex rel. Huggett v. Montgomery, La.App., 167 So. 147, being cited in support of this proposition.

There is no substance in the contention that there is a material difference between the instant suits and the Heard case, which was a mandamus proceeding to compel the State Auditor and State Treasurer to warrant and pay certain claims as directed by an Act of the Legislature. The respondents there, as here, assailed the constitutionality of the statute but the court held that they were without interest to do so.

Nor do we find merit in the argument that the doctrine of the Heard case has not been followed in the later jurisprudence as we know of no pronouncement by this Court wherein the soundness of that decision has been questioned.

State ex rel. Huggett v. Montgomery, supra, relied on by respondents, was a mandamus proceeding to compel the tax collector of the City of New Orleans to cancel certain taxes in conformity with Act 161 of 1934, as amended, which entitled relator to a cancellation of all assessments for taxes, State and City, except those for nonpayment of which adjudication had been made to the State and City respectively. The respondent Tax Collector refused to cancel the taxes, until ordered to do so by a court of competent jurisdiction, on the ground that the City Attorney had advised him that the Act upon which relator relied was unconstitutional. There was judgment in favor of relator in the district court, from which the City of New Orleans and Orleans Parish School Board (not the re-

1.   Sometimes called the Louisiana doctrine.   See Note 42 L.R.A. at page 513.

spondent tax collector) appealed, alleging that they were adversely affected thereby. On motion to dismiss the appeal, relator contended, inter alia, that the appellants were without right or interest to raise the constitutionality of the Act in question. This motion was overruled on the authority of City of Gretna v. Bailey, 141 La. 625, 75 So. 491 and, in its discussion, the Court observed that there was uncertainty in the jurisprudence of this Court on the subject.

Although the decision in the Huggett case is correct as the City of New Orleans and the parish school board, having a real interest, were entitled to assert the unconstitutionality of the Act, the remark of the Court concerning the uncertainty of our jurisprudence in these matters was not appropriate. This statement undoubtedly emanated from the failure of the Court to recognize the difference between cases wherein political subdivisions have been permitted to raise the constitutionality of a legislative act which adversely affects them, City of Gretna v. Bailey, supra,[2] State ex rel. Nicholls v. Shakespeare, 41 La.Ann. 156, 6 So. 592 and State ex rel. Board of School Directors v. City of New Orleans, 42 La.Ann. 92, 7 So. 674[3] and those matters, State ex rel. New Orleans Canal & Banking Co. v. Heard, supra; Basset v. Barbin, 11 La.Ann. 672 and see Hommerich v. Hunter, 14 La.Ann. 225,[4] in which it is held that an executive officer cannot defend, on the ground of unconstitutionality, a proceeding brought against him to require his performance of pure ministerial duties under a legislative act.[5]

2. This case specifically overruled the decision rendered in Mayor & Council of the City of Carrollton v. Board of Metropolitan Police, 21 La.Ann. 447.

3. It was pointed out in the opinion in that matter that, although the Court in State ex rel. Nicholls v. Shakespeare, 41 Ann. 156, 6 So. 592, questioned the propriety of the defendants' challenge of the validity of the act, it nevertheless considered that defense and sustained the statute's constitutionality.

4. See also State ex rel. Hall v. Judge of the Tenth Judicial District, 33 La. Ann. 1222 and Crespo v. Viola, 152 La. 1088, 95 So. 256, wherein it is held that a Judge is without interest in raising the constitutionality of a statute.

5. The doctrine of these cases should not be confused with the decisions holding that a public officer, as defendant in a mandamus proceeding, may claim that the interpretation placed on a statute by a particular relator, seeking performance, would be unconstitutional if construed to cover such relator. The latter ruling is distinguishable since the public officer does not contend that the statute is unconstitutional, but merely opposes the interpretation sought by the relator as unconstitutional. If the court rules in favor of the defendant in such an instance, it does not hold that the statute is unconstitutional but merely that the interpretation sought to be placed on the statute by the relator would not be in harmony with the Constitution. This was recognized by the Court in State ex rel. Tulane Homestead Ass'n v. Montgomery, 185 La. 777, 171 So. 28. However, it is to be noted that in that case the intervenors, City of New Orleans and Orleans Parish School Board, had a direct interest in assailing the constitutionality of the statute and therefore the court likewise properly upheld their right to do so under authority of City of Gretna v. Bailey, 141 La. 625, 75 So. 491.

■ The instant cases fall squarely within the doctrine of the Heard case and we consequently conclude that respondents are without right to question the constitutionality of Act 697 of 1954.

Respondents also contend that petitioners are not entitled to the pension provided by Act 697 of 1954. Sections 1 and 2 of the statute, which are pertinent to this point, read as follows:

"Section 1. Be it enacted by the Legislature of Louisiana that upon the death of any retired judge of a Court of Record of the State of Louisiana, now or hereafter eligible for a pension or retirement pay under the laws of the State of Louisiana, regardless of whether or not such judge has actually retired that the spouse of said judge shall receive as a pension one-half (½) of the pension or retirement pay previously paid to the said retired judge of a Court of Record, or for which such judge would be eligible if he had retired immediately before death so long as said spouse shall remain alive and unmarried *provided that this pension shall also be paid to the surviving widow of any judge who had retired or who would have been eligible for retirement at the end of the term of office for which he had already been elected and who died before the effective date of this act.* [Italics ours.]

"Section 2. This act shall be applicable only to spouses of Judges of Courts of Record who have been married to the said judges at the date of death for a period of ten years prior to the retirement of such judge or ten years prior to the date on which said judge became eligible for retirement."

It is the position of respondents that, whereas petitioners fall within the classification of surviving widows entitled to the pension under the proviso contained in the first section of the Act, which we have above italicized, they are nonetheless ineligible as they are unable to fulfill the additional qualifications prescribed by Section 2, since neither *Judge Dore* nor *Judge Burgess* were retired or eligible for retirement at the dates of their death, and, therefore, petitioners could 'not have been married to them for ten years prior thereto.

It is shown by the Legislative Journals, which were admitted in evidence, that Senate Bill No. 239 (which later became Act 697) as amended after its introduction, provided pensions for the spouses of judges within three classifications, (1) judges presently living who had retired either before or after the passage of the Act, (2) judges presently living who were then eligible for retirement, but who had not retired, and (3) to all other judges upon their becoming eligible for retirement after the passage of the Act.

Section 2 of the Act, as originally drawn and enacted, was sufficient in its verbiage to include the qualified widows of the judges in the categories above mentioned because it made the surviving widow's right to a pension dependent upon her having been married to the judge at the date of his death for ten years either prior to his retirement or ten years prior to his eligibility for retirement. When the Bill reached the House of Representatives, following its passage by the Senate, it was amended on the floor by the insertion, in Section 1, of the proviso which we have above italicized and, as thus amended, was finally enacted as Act 697. This added provision created two new classifications of judges, whose widows were to be accorded pension rights—that is, to the surviving widow (otherwise qualified) of (1) any retired judge who had died before the effective date of the Act, and (2) of any judge "who would have been eligible for retirement at the end of the term of office for which he had already been elected and who died before the effective date of this act."

Unfortunately, Section 2 of the Statute was not amended before its final passage so as to clearly cover and embrace with appropriate language this second classification of widows of judges, provided for by the floor amendment to the Act. As a result, under a literal reading of Section 2, providing only for the additional qualifications for spouses of the judges coming within the classifications originally contained in the bill, there is no way by which petitioners, who are otherwise eligible, could meet the qualifications prescribed by that Section.

In this situation, the question arises as to the duty of the court in construing the statute. It has been many times said that it is the function of the courts to interpret the laws so as to give them the connotation the lawmaker obviously intended and not to construe them so rigidly as to give them preposterous or odd meanings. State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213; Berteau v. Police Jury of Parish of Ascension, 214 La. 1003, 39 So.2d 594 and Webb v. Parish Council of Parish of E. Baton Rouge, 217 La. 926, 47 So.2d 718. The object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result. Bradford v. Louisiana Public Service Commission, 189 La. 327, 179 So. 442; See also City of Shreveport v. Gregory, 186 La. 407, 172 So. 435.

Sutherland, "Statutory Construction", 3rd Ed., Vol. 2, Section 4703, states:

"A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with

every other part or section so as to produce a harmonious whole."[6]

Applying the foregoing canons of construction to the cases at bar, it is manifest that, since the Legislature has evinced in clear and unmistakable language its intention in Section 1 of the Act to grant pensions to the wives of judges who died before the passage of the Act, if those judges would have become eligible for a pension during the term they were serving at the time of their death, it is our duty to give effect, if possible, to that paramount design.

As stated above, the only basis upon which the petitioners' eligibility for the benefits of the Act could be denied is that a literal reading of the language of Section 2 makes it impossible for them to qualify. However, if we consider Section 2 in a broader aspect, it is plain that the legislative purpose in providing the additional qualifications therein stated of marriage for ten years prior to the retirement of the judge at the time of death or ten years prior to the judge's eligibility for retirement, was to insure that the spouse had lived with the judge during a substantial part of his judicial tenure and thus, to some extent, had contributed to the public

service. It would therefore seem conformable with this objective to construe Section 2 of the Act to mean that, if the applicant, otherwise eligible for the pension, had lived with the deceased judge for a period of ten years prior to his retirement, or ten years prior to the time the judge became eligible for retirement, or ten years prior to the time the judge would have become eligible for retirement in case he died before the passage of the statute, she qualifies to receive the benefits of the Act. In this manner, the legislative intent can be given effect and we conceive it our obligation to adopt such a construction as any other would necessarily defeat the purpose of the provisions added to Section 1, which extends the pension rights to the spouses of those judges who passed on before the effective date of the law and who would have been eligible for retirement before the expiration of their term of office.

Since the petitioners had lived with their respective spouses for almost 40 years prior to their deaths, the judge was correct in holding that they are qualified for the pensions for which they applied.

The judgments appealed from are affirmed.

6. In Hibernia National Bank v. Louisiana Tax Commission, 195 La. 43, 196 So. 15, 18, it was stated: "It is a recognized rule of statutory construction that the act as a whole ought to be interpreted so that no clause, sentence, or word shall be superfluous, or meaningless, if that result can be avoided." Copious citations are given as authority for the rule.