hCALOGERO, Chief Justice.
This case presents the issue of whether Louisiana law permits a judge to refuse to perform a statutory duty that is ministerial in nature, presumably in order to precipitate a mandamus action in which the judge will have the opportunity to argue that the statute is not constitutional. We hold that a judicial officer, like any other public officer, lacks standing to raise the constitutionality of a statute as a defense in a mandamus action seeking to compel the performance of duties that are mandated by statute and ministerial in nature. Thus, defendants here were without standing to raise the issue of the constitutionality of La.Rev.Stat. 32:57(G), and the district court erred in considering this argument.

FACTS AND PROCEDURAL HISTORY:

The plaintiff in this case, Greater New Orleans Expressway Commission (“the Commission”), is responsible for policing the Huey P. Long Bridge and operating, maintaining, and policing the Lake Pon-chartrain Causeway Bridge. In December 2001, the Commission filed a petition for writ of mandamus against the defendants, two First Parish Court judges, to compel them to collect costs from certain traffic violators, as required by La.Rev.Stat. 32:57(G). The judges had refused to eol-lect | ¿this cost, believing that the statute was unconstitutional.
Under La.Rev.Stat. 32:57(G)(1), a “cost” of five dollars[1] shall be collected from “any person who is found guilty, pleads guilty, or pleads nolo contendere to any motor vehicle offense when the citation was issued for a violation on the Huey P. Long Bridge or the Lake Pontchartrain Causeway Bridge or approaches to and from such bridges.” The five dollar cost only applies, however, where the citation was issued by Commission police officers. Id,.[2] The proceeds are initially to be deposited in the state treasury, then later moved into a “special fund” known as the Greater New Orleans Expressway Commission Additional Cost Fund. Id. (G)(2). The statute then directs the legislature to appropriate all money in the special fund to the Commission to “supplement the salaries of P.O.S.T. certified officers and for the acquisition or upkeep of police equipment.” Id.
The district court denied the Commission’s petition for mandamus. In its reasons for judgment, the court found that the defendants had standing to question the constitutionality of the statute, and that the statute violated several provisions of the constitution.[3] The Commission appealed this judgment directly to this court. *573 We held that we lacked jurisdiction to hear the appeal under La. Const, art. V, § 5(D), because the district court’s declaration of unconstitutionality appeared only in the reasons for judgment, and not in the judgment itself. Greater New Orleans Expressway Comm’n v. Olivier, 2002-2795 (La.11/18/03), 860 So.2d 22, 24. Because this court lacked jurisdiction, we transferred the appeal to the Fifth Circuit Court of Appeal. Id. The Fifth Circuit held that, although it possessed appellate jurisdiction over the case, it could not consider the district court’s determination that the statute was unconstitutional because this determination did not appear in the court’s judgment. Greater New Orleans Expressway Comm’n v. Olivier, 04-79 (La.App. 5 Cir. 5/26/04), 875 So.2d 876, 878.[4] Thus, the Fifth Circuit dismissed the appeal and remanded to the district court to modify its judgment to incorporate the declaration of unconstitutionality. Id.
On remand, the district court amended its judgment to state that “La. R.S. 32:57(G) is unconstitutional for the reasons set forth in the Court’s Reasons for Judgment dated March 5, 2002.” The Commission has appealed to this court, challenging the district court’s judgment on three grounds: (1) the court improperly held that defendants had standing to raise the issue of the constitutionality of the statute; (2) the court erred in declaring the statute unconstitutional; and (3) the court erred in denying the Commission’s petition for writ of mandamus. Because the district court declared La.Rev.Stat. 32:57 unconstitutional, we have appellate jurisdiction pursuant to La. Const, art. V, § 5(D) to consider the propriety of the trial court’s judgment.

DISCUSSION:

Before addressing the district court’s holdings that La.Rev.Stat. 32:57 is unconstitutional and that the Commission was not entitled to mandamus relief, we must first consider the court’s determination that these judges, as defendants in a mandamus proceeding, had standing to challenge the constitutionality of the statute. _J^This is so because this court may only consider a constitutional issue where “ ‘the procedural posture of the case and the relief sought by the appellant demand that [it] do so.’ ” State v. Mercadel, 2003-3015 (La.5/25/04), 874 So.2d 829, 834 (quoting Ring v. State, DOTD, 2002-1367 (La.1/14/03), 835 So.2d 423, 428). Among the threshold requirements that must be satisfied before reaching a constitutional issue is the requirement that the party seeking a declaration of unconstitutionality have standing to raise a constitutional challenge. Id. The requirement of standing serves to facilitate deference to the legislature in matters within the legislature’s purview. Because legislators owe the same duty to obey and uphold the constitution as do judges, legislators are presumed to have weighed the relevant constitutional considerations in enacting legislation, and legislative acts are presumed constitutional “until declared otherwise in proceedings brought contradictorily between interested persons.” State v. Bd. of Supervisors, La. State Univ. & Agric. & Mechanical College, 228 La. 951, 84 So.2d 597, 600 (1955).
This court has explained that a party has standing to argue that a statute violates the constitution only where the statute “seriously affects” the party’s own rights. Mercadel, 874 So.2d at 834 (quoting Latour v. State, 2000-1176 (La.1/29/01), 778 So.2d 557, 560); see also *574 Bd. of Supervisors, 84 So.2d at 600 (“[A] litigant not asserting a substantial existing legal right is without standing in court.”). To have standing, a party must complain of a constitutional defect in the application of the statute to him or herself, not of a defect in its application to “third parties in hypothetical situations.” Whitnell v. Silverman, 95-0112 (La.12/6/96), 686 So.2d 23, 29 (citing cases).
On several occasions, this court has considered how the doctrine of standing applies to a public official who is a party to a mandamus action seeking performance | Bof statutory duties, and who attempts to justify his or her nonperformance on the grounds that the statute violates the constitution. In State ex rel. New Orleans Canal & Banking Co. v. Heard, 18 So. 746, 746 (La.1895), the relators sought a writ of mandamus to compel certain state executive officers, including the State Auditor and the State Treasurer, to warrant and pay amounts owed from the surplus interest fund of 1889, as required by statute. The relators claimed that they, acting as fiscal agents of the state, paid $2,616 apiece to holders of interest coupons on consolidated bonds issued by the state, and sought reimbursement of these payments pursuant to Concurrent Resolution No. 182 of the General Assembly of 1894. Id. In defense of their failure to reimburse rela-tors from the surplus interest fund, the executive officers argued that Concurrent Resolution No. 182 was unconstitutional. Id. at 746. After reviewing relevant jurisprudence, the court concluded that the executive officers did not have standing to assert the unconstitutionality of Concurrent Resolution No. 182. Id. at 751. The court stated:
[W]e feel fully confirmed in the correctness of the conelusion[ ] ... that executive officers of the state government have no authority to decline the performance of purely ministerial duties which are imposed upon them by a law, on the ground that it contravenes the constitution. Laws are presumed to be, and must be treated and acted upon by subordinate executive functionaries as, constitutional and legal, until their unconstitutionality or illegality has been judicially established; for in a well-regulated government obedience to its laws by executive officers is absolutely essential and of paramount importance. Were it not so, the most inextricable confusion would inevitably result, and ‘produce such collision in the administration of public affairs as to materially impede the proper and necessary operations of government.’ It was surely never intended that an executive functionary should nullify a law by neglecting or refusing to execute it. The result of this conclusion is that respondents are without right to urge the uneonstitutionality of the concurrent resolution which is involved.
| rJd. at 751. Having found that the executive officers lacked standing, the court did not consider their constitutional challenge to the statute.
In Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1955), we revisited the issue of a public official’s standing to raise a constitutional challenge in a mandamus action seeking to compel the performance of statutory duties. The widows of two judges applied for mandamus to compel the State Auditor and State Treasurer to pay them widows’ pensions as required by La.Rev. Stat. 13:5. Id. at 200. The state officers argued that the statute authorizing payment of the pensions was unconstitutional. Id. at 201. This court observed that the rule established in Heard “represented] the majority view in this country,” and concluded that the instant case was indistinguishable from Heard. Id. Thus, the state officers were without standing to *575 question the constitutionality of the statute at issue.
Again, in Smith v. Flournoy, 238 La. 432, 115 So.2d 809 (1959), this court rejected a public official’s attempt to assert the unconstitutionality of a statute in a mandamus action seeking to compel performance of statutory duties. In Smith, two registered voters sought a rule directing the registrar of voters to show cause why she should not be required to mail notices to, and publish the names of, eight illegally registered voters as required by La.Rev. Stat. 18:133. Id. at 810. The registrar filed numerous exceptions, all of which were overruled, and the registrar then applied for various writs to stay the proceedings below. Id. In support of her position that she was not required to mail notices or publish names, the registrar argued that the statute directing her to do so violated the state and federal constitutions. Id. at 812. The court declined to consider the registrar’s constitutional argument, because it found, relying on Heard and Dore, that “relator is without interest to assert the unconstitutionality of the statute as a defense to a suit to compel the performance of |7ministerial duties imposed on her by law.” Id. The court further rejected the registrar’s argument that Heard did not apply to her because she had sworn an oath to support the constitution and performance of the statutory duties at issue would force her to violate this oath. Id. at 813. The court noted that all state officers were required to take the same oath, and that to permit all state officers to question the constitutionality of statutes merely because of this oath would abrogate the Heard rule entirely. Id. The court also rejected the registrar’s argument that she had standing to challenge the statute because she could potentially be subject to fines and imprisonment for violation of the registration laws. Id. The court determined that the possibility of future prosecution for violating the statute was not enough reason to disregard the rule that a party must have standing to challenge the constitutionality of a statute. Id[5]
This court has applied the standing requirements articulated in Heard not only to executive officials, but to members of the judicial branch as well. In State ex rel. Hall v. Judge of the Tenth Judicial District, 33 La. Ann. 1222, 1881 WL 8805, at *1 (La.1881), a case that predated Heard, a district attorney brought a mandamus action seeking to compel a judge to allow him to file an information charging a defendant with violating Act No. 8 of the Extra Session of 1870. The judge had refused to permit the district attorney to file the information, because the judge believed the statute was unconstitutional. Id. This court found that the judge lacked standing to invoke constitutional concerns in refusing to allow a bill of information to be filed. Id. at *2. We reasoned that permitting judges such discretion would result in inconsistent application and enforcement of the criminal law:
IsSuch a latitude would present cases where, in a certain district, an accused could be charged, tried and punished for an offence under a statute recognized as binding by the judge of that particular district, when at the same time, in an adjoining district, the accused would be protected from prosecution for a similar offence, on the ground that the same statute would be held unconstitutional by the judge of the latter district.
Id. Thus, we stated, it was better left to criminal defendants actually charged with *576 violating a statute, and not to judges in a criminal cases, to raise the issue of a statute^ constitutionality. Id.
Similarly, in Crespo v. Viola, 152 La. 1088, 95 So. 256 (1922), this court again held that a judge lacked standing to attack the constitutionality of a statute as a defendant in a mandamus proceeding which sought to procure his compliance with the statute. In Crespo, a trial judge ordered the defendant in a case pending before him to pay the court stenographer, and threatened to decide the case without all testimony having been filed- if he did not. Id. at 256. The defendant brought a mandamus action against the judge to prohibit him from deciding the case without considering all testimony. Id. In defense, the judge argued that a statute that would have compelled the plaintiff in the pending action to pay the stenographer was unconstitutional. Id. at 257. We held that the judge was not entitled to raise the issue of the constitutionality of the statute in this manner. Id.[6]
Thus, we reject defendants’ attempt to distinguish Heard as applying only to executive officers. Although the officials involved in Heard, Dore, and Smith were members of the executive branch, those decisions did not turn upon this fact. And, more significantly, the Hall and Crespo eases applied the same standing requirements to members of the judiciary as were applied to the executive branch in Heard and its 19progeny. Moreover, we find that some of the policy concerns we articulated in Heard with .respect to the executive branch apply with equal force when the public officer at issue is a member of the judiciary. Although it is uniquely the province of judges to interpret the law, it is essential that they constrain themselves to do so only when an appropriate case is presented to them for adjudication. To condone defendants’ refusal to comply with a presumptively constitutional legislative act, when no litigant had challenged the act’s validity, would tend to hasten the “inextricable confusion” and “collision in the administration of public affairs as to materially impede the proper and necessary operations of government” that Heard foretold.
Also, the dangers of inconsistent enforcement that we predicted in Hall have become reality in this case. While defendants have refused to collect the statutory cost, the judges of the Second Parish Court for the Parish of Jefferson and the 22nd Judicial District Court for the Parish of St. Tammany have imposed the cost. Thus, whether a violator is charged the cost depends upon the fortuity of which court he happens to find himself in, a result that we do not countenance.
Just as we noted in Hall, 1881 WL 8805, at *2, that a criminal defendant is better situated to challenge the constitutionality of a criminal statute he is accused of violating, a challenge to the validity of La.Rev. Stat. 32:57(G) would be better left to a party against whom the five dollars had actually been assessed. These judges have not demonstrated that they meet the basic standing requirement of a serious adverse effect on their own rights, as opposed to the rights of another party. Nor is there any merit to defendants’ argument that their rights are seriously affected by this statute because performance of their statutory duties would violate their judicial oath to uphold the constitution. This court rejected the same argument in Smith, 115 So.2d at 813. As we reasoned in Smith, to permit judges the discretion to refuse to | inenforce any statute about which they *577 may have question because of their judicial oaths would do away with the Heard standing requirement entirely. In addition, the judicial oath requires judges to support not only the Louisiana constitution, but also “the Laws of this State.” Thus, defendants owe an equal duty to apply and enforce this presumptively constitutional legislative act as they do the state constitution.
Moreover, we find that defendants’, and the court of appeal’s, reliance upon Safety Net for Abused Persons v. Segura, 96-1978 (La.4/8/97), 692 So.2d 1038, as establishing a precedent for judicial nullification like that defendants have engaged in, is unavailing. In Safety Net, a mandamus action was brought to compel a city court judge and clerk of court to collect an additional fee in certain cases as required by La.Rev. Stat. 13:1906. Id. at 1039. The defendants asserted in response that this statute was unconstitutional. Id. The trial court rejected the defendants’ constitutional challenge and issued a writ of mandamus. Id. The court of appeal vacated and set aside the writ, holding that the statute violated the constitution. Id. This court heard the case as an appeal. Without considering the issue of the judge’s standing to attack the constitutionality of the statute, presumably because this issue was not raised, we proceeded to affirm the court of appeal’s determination that the statute was unconstitutional. Id. at 1040-45.
Safety Net does not stand for the proposition that a judge may question the constitutionality of a statute in a mandamus proceeding in which he is a party, because this court did not consider or decide that precise question in the case. The Safety Net court merely proceeded to the constitutional question without considering the threshold issue of standing. This case does not provide a blueprint for judges seeking to mount challenges to the constitutionality of statutes in the future.[7]
lnAIthough we find that Safety Net does not support defendants’ contention that they have standing, we note that the constitutional issue defendants have identified in this case is not an insignificant one. Safety Net, 692 So.2d 1041, established the principle that the legislature may not use the courts to raise revenue to fund causes, like, in that case, funds to aid victims of family violence, that are unrelated to support of the court or court system. While we reserve for another day the issue of whether La.Rev.Stat. 32:57 runs afoul of the standard we established in Safety Net, we observe that the concerns that prompted defendant judges’ refusal to impose the five dollar cost were in fact real.
Thus, we hold that defendants’ lacked standing to challenge the constitutionality of La.Rev.Stat. 32:57(G) as parties to a mandamus proceeding which seeks to compel them to perform statutory duties that are ministerial in nature. Because we find that the threshold requirement of standing is not met in this case, we do not consider the correctness of the district court’s judgment that the statute is unconstitutional.

DECREE:

The district court’s holding that the defendant judges had standing to challenge the constitutionality of La.Rev.Stat. 32:57 is reversed, and its judgment finding the statute unconstitutional and denying the Commission’s petition for writ of manda *578 mus is vacated and set aside. In light of our ruling in this case, it becomes unnecessary for.the court to decide the constitutional issue at this time. ,We remand the case to the district court with instructions to find that defendants did not have standing to raise the constitutional issue as a defense, and to permit the litigation to go forward.
| ^VACATED, SET ASIDE, and REMANDED.
JOHNSON, J., dissents and assigns reasons. :
WEIMER, J., concurs and assigns reasons.

. Although the statute labels the five dollars violators are charged a "cost,” one of the central issues defendants have raised is whether this "cost” is actually a disguised tax.

. This five dollar cost is in addition to the base court costs and the actual fine a traffic violator already must pay. Defendants note that, in First Parish Court, each person who commits a traffic violation is already responsible for paying $78 in base court costs even before assessment of the extra five dollar statutory cost.

.The district court found that the statute violated the Louisiana constitution in several respects: (1) the statute was unconstitutionally vague; (2) the statute imposed a tax in violation of the separation of powers doctrine; (3) the statute created an unconstitutional classification in violation of the equal protection doctrine; and (4) the statute impermissi-bly allocated collected funds.

. We express no opinion concerning the correctness of the court of appeal's reasoning.

. See also La. Motor Vehicle Comm'n v. Wheeling Frenchman, 235 La. 332, 103 So.2d 464, 468 (1958) ("As a general rule, a public officer or body is without interest or right to question the constitutionality of a statute which he or it is entrusted to administer.”).

. Both Hall and Crespo are cited in Dore, 84 So.2d at 203 n. 4, as standing for the proposition that “a Judge is without interest in raising the constitutionality of a statute.”

. Neither does State v. Judge of the Fifth Judicial District, 5 La. Ann. 756, 1850 WL 3912 (La. 1850), support defendants’ argument that they have standing. Again, as in Safety Net for Abused Persons, the court proceeded to decide the constitutional issue without considering the preliminary issue of standing. The court's failure to address the judges’ standing should not be interpreted as an implicit finding that standing existed.