**UNITED STATES of America, Plaintiff,**

v.

**Mary Ethel FOX, Registrar of Voters, Plaquemines Parish, Louisiana, Lionel L. Lassus, Deputy Registrar of Voters, Plaquemines Parish, Louisiana, and State of Louisiana, Defendants.**

Civ. A. No. 11625,
Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 2, 1962.

Kathleen Ruddell, U. S. Atty., New Orleans, La., St. John Barrett, Richard K. Parsons, Attys., Dept. of Justice, Washington, D. C., for the United States.

Leander H. Perez, Sidney W. Provensal, Jr., New Orleans, La., for defendants Mary Ethel Fox and Lionel L. Lassus.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, M. E. Culligan, Jr., John E. Jackson, Jr., Henry J. Roberts, Jr., Weldon A. Cousins, Asst. Attys. Gen. of Louisiana, for State of Louisiana.

AINSWORTH, District Judge.

This is a suit of the United States filed October 16, 1961, pursuant to the Civil Rights Acts of 1957 and 1960, 42 U.S.C.A. § 1971 et seq., brought by the Attorney General in accordance with the provisions of Section 1971(c) against the State of Louisiana (as provided in Section 601(b) of the Civil Rights Act of 1960), the Registrar of Voters, Mary Ethel Fox, and Deputy Registrar of Voters, Lionel L. Lassus, of Plaquemines Parish, Louisiana.

Plaintiff alleged that defendants, in conducting registration for voting in Plaquemines Parish, Louisiana, have engaged in racially discriminatory acts and practices against Negro citizens pursuant to a pattern and practice. It seeks a preliminary and permanent injunction against defendants, as well as immediate registration of all Negroes who have applied for registration since January 1953 and who possessed at the time of their applications the qualifications of the least qualified white person who was registered. Discovery depositions were taken by the parties on February 26, 27 and 28, March 1 and April 2, 1962, of certain white and Negro citizens of Plaquemines Parish.

Thereafter, on April 13, 1962, the United States filed a motion "for a preliminary injunction enjoining, during the pendency of this case, the defendants, their agents, employees, successors, and all persons in active concert or participation with them, from engaging in any act or practice which involves or results in distinctions based on race or color in the registration or voting processes in Plaquemines Parish, Louisiana, and specifically order said defendants:

"1. To register as a voter any Negro applicant who posseses the following qualifications and none of the following disqualifications:

"(a) That he is a citizen not less than twenty-one years of age;

"(b) That he has been a resident of Louisiana for one year; of Plaquemines Parish for six months, and of the precinct in which he offers to register as a voter for three months next preceding any election;

"(c) That he possesses the necessary qualifications regarding character and citizenship, as demonstrated by his willingness to take and sign the oath and affidavit prescribed by Louisiana law, and

"(d) If the applicant did not meet the foregoing qualifications as of January 18, 1955, that he is also able to read and write as shown by his making written application in his own hand.

"2. To point out to each Negro applicant any answers, errors or omissions on his ap-

plication form, which, if uncorrected or uncompleted, will disqualify him, and to permit him to correct or complete the form.

"3. To cease requiring any Negro applicant to take or pass the so-called 'constitutional interpretation test' as a prerequisite to qualifying as a voter.

"4. To cease using the application form as an examination or test for Negro applicants, and to use such application only as an information sheet for obtaining data relating to the Negro applicant's qualifications, as such form has been and is being used in registering white applicants.

"5. To place on the current registration rolls of Plaquemines Parish and all official copies thereof, the names of the following Negro citizens of Plaquemines Parish: (Here are listed 41 names.)

"6. To file monthly reports with the Clerk of Court reflecting the name, address, and race of each applicant for registration, the disposition of his application, and, if rejected, the reason therefor."

No finding of unconstitutionality of any Louisiana constitutional or statutory provision is sought by plaintiff.

Pre-trial conference was held in chambers on April 27, 1962, and the motion for a preliminary injunction was heard by the court without a jury on May 1, 2 and 3, 1962, at which time the court received in evidence on the offer of the United States all of the voting records, application forms and test forms of the defendant Registrar, all of the discovery depositions heretofore taken by the parties, and numerous other exhibits. A number of witnesses testified orally for both sides and defendant Registrar submitted in evidence a number of exhibits.

Briefs were submitted by all parties, proposed Findings of Fact and Conclusions of Law were submitted by the United States on July 16, 1962, and reply of defendant Registrar on July 23, 1962. We permitted the filing on September 20, 1962, of additional evidence in affidavit form by defendant Registrar, relating to a new system of registration inaugurated by the Registrar on September 10, 1962. The matter is now before us for decision on the motion for a preliminary injunction.

Plaquemines Parish is one of the smallest in population in Louisiana, the 1960 census having recorded 14,239 people. It has no urban population and 82.4% are classified as rural non-farm citizens and 17.6% as rural farm citizens. The non-white population is 38.7%. The parish is one of the richest in natural resources in the state. It is geographically situated below and south of New Orleans, on both sides of the Mississippi River, extending to the Gulf of Mexico. On November 17, 1954, the governing body of Plaquemines acting under authority of the applicable Louisiana statute[1] adopted permanent registration which meant that all persons then on the registration rolls and all those permanently registered would remain on the rolls permanently unless they were stricken therefrom as provided by law because of nonvoting in any election within a consecutive two-year period. On December 9, 1954, the first constitutional interpretation test of the Louisiana Constitution was given to an applicant as a condition of registration. On January 18, 1955, the governing body of the parish adopted a resolution requiring the Registrar strictly to enforce the standards of registration, including the giving of a constitutional interpretation test to all applicants for registration.

The present Registrar, Miss Fox, has served in that office from July 1958 to

1. LSA–R.S. 18:231–261.

date; her Deputy Lassus has served from November 1958 to date. The Registrar's predecessor in office, Giordano, served in that office from 1945 until Miss Fox took over the duties of the office, though he was actually dismissed from the office on September 1, 1956, by the State Board of Registrars. He served, however, until his successor, the present Registrar, Miss Fox, was qualified in July 1958. The Registrar and her Deputy are the only employees of the office which is situated in the Courthouse at the parish seat at Pointe a la Hache. Several years ago in order to accommodate the public several substations at strategic places in the parish were opened at which time additional help was secured to assist in registration of large numbers of persons. This practice has been discontinued and registration occurs only in the office at the Courthouse at the parish seat.

Registration in Louisiana is a necessary prerequisite to voting in any election. The qualifications of electors and method of registration are set forth in the Louisiana Constitution and Statutes. LSA–Const. Art. 8, § 1, LSA–R.S. 18:31–42. In addition to the usual qualifications, such as being of the age of majority, citizenship and residency, certain standards of good character and literacy must also be met. To establish an applicant's literacy, Louisiana Constitution Article 8, Section 1(c), requires that he shall be able to read and write in the English language or his mother tongue and shall demonstrate his ability to do so when he applies for registration by reading and writing from dictation by the Registrar any portion of the preamble of the United States Constitution; also, that he must make written application which shall contain certain essential facts to show that he is entitled to register to vote and the application shall be entirely written, dated and signed by him "in the presence of the registration officer or his deputy, without assistance or suggestion from any person or any memorandum whatever, other than the form of application." Section 1(d) of the constitutional provision referred to requires that the person shall be of good character and reputation and shall be able to understand and give a reasonable interpretation of any section of either the Constitutions of the United States or the State of Louisiana when read to him by the Registrar. The applicant must demonstrate that he is well disposed to the good order and happiness of the state by executing an affidavit that he will faithfully and fully abide by all the laws of Louisiana.

The Louisiana Legislature at its 1962 Regular Session passed Acts 62 and 63 which installed a new system of uniform procedures for the registration of voters in all parishes of the state, said by resolution of the State Board of Registration "to insure a system of non-discriminatory registration of voters with the view of affording all qualified voters the same opportunity for successful registration." The so-called objective "Citizenship Test of Our Constitution and Government" propounds to applicants six questions each with three optional answers set forth in the test card. There are ten such cards which are displayed to applicant face down for applicant to select one for his test. Applicant must circle the applicable answer and is required to answer four questions correctly. He must also execute, as formerly, the application form, the affidavit that he will faithfully abide by Louisiana's laws, and must be able to read and write, from dictation, the preamble to the United States Constitution.

The constitutional interpretation test as a prerequisite for registration has thus been discarded.

The United States census report of 1960 showed that the population of Plaquemines Parish, of persons over 21 years of age, consisted of 8,633 white and 2,897 non-white. The registered voters of that parish as of March 12, 1962, consisted of 6,906 white and 43 Negro persons. Of this total, about half were enrolled by taking a constitutional interpretation test and the other half were registered under the old procedure

whereby completion of the application form alone was sufficient. The latter were frozen in when permanent registration was adopted by the parish.

■ The law is clear that "The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised * * * absent of course the discrimination which the Constitution condemns." Lassiter v. Northampton County Bd. of Elections, 360 U.S. 45, 50, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1954).

In Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 931, 59 L.Ed. 1340 (1915), the Supreme Court upheld the right of the states to apply a literacy test to all voters irrespective of race and color, saying, "No time need be spent on the question of the validity of the literacy test considered alone as we have seen its establishment was but the exercise by the State of a lawful power vested in it, not subject to our supervision, and, indeed, its validity is admitted."

■ It is equally well established that a Registrar has a legal duty to conduct voter registration in a fair and reasonable manner without distinction or discrimination because of race or color and a Registrar may not use procedures and practices which deny or abridge the right of any citizen to vote on account of his race or color. Fourteenth and Fifteenth Amendments, U.S.Const.; Civil Rights Acts of 1957 and 1960, 42 U.S.C.A. § 1971 et seq.; United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed. 2d 524 (1960); United States v. Thomas, 362 U.S. 58, 80 S.Ct. 612, 4 L.Ed.2d 535 (1960); United States v. State of Alabama, D.C., 192 F.Supp. 677 (1961); State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583. Unlike the facts in State of Alabama, supra, the defendants here deny that there has been discrimination because of race or color in the registration procedures of their office.

■ At the outset defendants objected to the admissibility in evidence of the discovery depositions of numerous witnesses, citizens of the parish, on the ground that it was not shown as provided by Rule 26(d) of the Federal Rules of Civil Procedure that the witnesses resided more than 100 miles distant from a courthouse; that the depositions were taken for discovery purposes only and not for use at the trial hereof. We reject this contention because in a proceeding for preliminary injunction oral testimony, although permissible, is not absolutely required. The court may receive and consider both affidavits and other documents which are the equivalent of affidavits. The depositions were taken under oath and we hold that they are at least as good as affidavits on the hearing for a motion for preliminary injunction.[2] Objection was also made to certain statistical summaries prepared by plaintiff's counsel and submitted to the court for consideration, but these summaries were not received in evidence and are merely written statements by counsel for the plaintiff of what they contend the evidence shows. These statistics have therefore not been received as evidence by the court and will be considered merely as argument of counsel. They represent tabulations of counsel of portions of the voluminous records of the Registrar's office. There is no reason why they should not be considered, unless it is clearly indicated there is an error in the tabulation.

■ Evidence was also admitted concerning the practices of the Registrar's office prior to July 1958 when the present defendant, Miss Fox, took over the duties of the office, the Registrar objecting, however, that she is not responsible for any acts of omission or commission by her predecessor in office, Mr. Giordano, who served from 1945 until she assumed her duties. The short answer to this contention, however, is found in the Fifth Circuit's recent decision in

2. Group v. Finletter, 108 F.Supp. 327 (D.C., D.C., 1952); Hoffritz v. United States, 240 F.2d 109 (C.A.9, 1956);

Western Air Lines v. Flight Engineers Internat'l Ass'n., AFL–CIO, 194 F.Supp. 908 (S.D.Cal., 1961).

Kennedy v. Lynd, 306 F.2d 222, citing its holding in State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, in which the court held that evidence of claimed discrimination may go back many, many years. The defendant Registrar also objects to any consideration by the court that the 41 named Negro citizens in the motion of the United States for preliminary injunction should immediately be registered by a mandatory injunction. The Registrar contends that the Civil Rights Act, Section 1971 (c), authorizes a proper proceeding for preventive relief only and that immediate registration of the 41 Negro citizens is unauthorized under the Act itself. This question has likewise been disposed of in State of Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, in which the court held that Congress expressly stated that relief available included injunctions "or other order," and that mandatory injunctions affirmatively compelling the doing of some act are a traditional tool of equity. In light of the evidence in the record the order of the District Judge in that matter that 54 Negroes be registered was held to be eminently proper. The question therefore is whether or not this record will justify an order of immediate registration of the 41 Negro citizens.

The court has carefully and painstakingly considered the evidence in connection with the application and test forms of the 41 Negro citizens to determine whether or not on their face any discrimination existed against these Negro applicants which would justify an order compelling the Registrar to place them on the rolls immediately. We found that of the 41 citizens, 4 are now registered to vote.[3] Of the 37 remaining applicants, 16 did not fill out the application form

or attempt to answer the constitutional test.[4] An examination of these cards which are in evidence discloses that virtually all of these 16 persons wrote nothing but their names at the bottom of each of the application and test card forms. For example, Angeline Jones and Earlie Pansy wrote on their test cards, "I can't answer." Roosevelt Pansy wrote, "No answer." Josephine B. Rodgers wrote, "I can not answer these questions." Mary Theresa Taylor wrote, "I don't know." The others wrote nothing but their names. Thirteen of the Negro applicants filled out their application cards but made no attempt to answer the constitutional test.[5] For example, Carolyn Sapp wrote on her two cards, "Can't answer" and "I can not fill this out." Eugene Sapp wrote, "Can't answer." Alvin Jones said, "I don't know." John Taylor said, "Don't know." Thelma Taylor said, "I don't know." Vivian Taylor said, "I don't understand it." Of the remaining 8 Negro applicants, 4 failed to fill out their application forms correctly, having numerous errors and also failed the constitutional test; the other 4 satisfactorily filled out the application form but failed the constitutional test.

Under the circumstances, all of the 37 Negro citizens who remain unregistered of the 41 sought to be registered by the motion of plaintiff have clearly failed to comply with Louisiana law in connection with their applications and test cards, and it would therefore be improper and an abuse of our discretion to order their immediate registration. However, we will order that the Registrar forthwith provide each of them with another opportunity to register since the conditions for registration have now changed.

---

3. Godfrey Cosse, Jr., Norma Johnson Cosse, Isabel B. Hardy, Vincent Paul Williams.

4. Andrew Boyd Franklin, Archie George Franklin, Lavinia Franklin, Alfred Griffin, Jr., Henry Hughes, Angeline Jones, Richard N. Jones, Earlie Pansy, Roosevelt Pansy, Josephine B. Rodgers, Margarite Rodgers, Elsie Taylor, Haspel

Taylor, Leo Taylor, Mary Theresa Taylor and Victoria Treme.

5. Sarah Brown, Lambert A. Duncan, Genella Johnson, Alvin Jones, Gertrude Jones, Carolyn Sapp, Eugene Sapp, Wilfred A. Smith, Elizabeth Louise Taylor, John Taylor, Thelma Taylor, Vivian Taylor and Yvonne Taylor.

Among other things, plaintiff has requested that the court make a finding under the provisions of 42 U.S.C.A. § 1971 (e) that the alleged deprivation of voting rights was because of race or color and was or is pursuant to a pattern or practice of discrimination. It is contended by the plaintiff that white persons are assisted in the filling out of their application and test forms whereas Negro citizens are denied assistance. The defendants strenuously deny the allegation and the evidence is in sharp conflict.

The evidence shows that at least since 1954 the Registrar has had an office at the parish seat of Plaquemines Parish at Pointe a la Hache in the Courthouse on the second floor clearly marked as the Registrar of Voters' office. Office hours are from 9:00 a. m. to 5:00 p. m., Mondays, Tuesdays and Saturdays; applicants are taken into the office one at a time in the order of their arrival. There is no waiting list. Every applicant is required to complete application and constitutional test card forms. If the applicant passes the examination, he must sign the poll book and his registration certificate is mailed to him. If an applicant fails, he is so advised and may apply again on a subsequent day. There is no coercion against any person because of race, all may apply and all are treated with courtesy. There is likewise no evidence that Negroes have been discouraged from applying for registration. There is no delay in notifying the applicant whether or not he passes and there are no separate facilities for persons because of race, all applying to and being given the test in the same room, though one by one.

During the last seven years, at least since January 18, 1955, as far as we can determine, there has been a grand total of 64 Negro applications rejected. Many of these rejected applied more than one time so that the total number of Negroes involved constitutes about 51 persons. Of these, 10 are now registered. Ac-

cordingly, there has been only an average of less than 8 Negroes per year rejected for registration. During this period of time approximately 49 Negroes have been registered. It is apparent that there has been no strong movement on the part of the Negro citizenry of the parish to become registered to vote since 1955. There remains a net total of 37 of those rejected whom it is sought to be registered immediately pursuant to the motion for preliminary injunction. The greatest barrier to their registration and the obstacle which undoubtedly discouraged many of them was the requirement beginning in December 1954 of the constitutional interpretation test as a condition of registration. This test has now been discarded by the Registrar by her action on September 10, 1962, pursuant to the action of the 1962 Louisiana Legislature and the resolution of the Louisiana Board of Registration promulgating the new system for applicants throughout the State of Louisiana.[6] This action undoubtedly removes the biggest obstacle which the Negro citizen has faced in his efforts to exercise his constitutional right as a citizen of the United States to register to vote in elections held in Plaquemines Parish.

Much greater and more sufficient evidence is necessary, however, in our opinion to justify a finding of a pattern or practice of discrimination and the evidence is insufficient here to permit such a holding. Where only 51 Negroes have been denied registration over a seven-year period by the Registrar and her predecessor, and but 37 remain of those rejected still seeking immediate registration under orders of this court, it would be an unwise exercise of our authority to hold that the facts here warrant the sweeping and broad holding sought here by plaintiff.

Nevertheless, there is sufficient evidence to justify our enjoining defendants by preliminary injunction from discriminating against any citizens of Pla-

6. See Registrar's affidavit to this effect with accompanying exhibits, filed in this court on September 20, 1962.

quemines Parish by reason of race or color in the administration of the registration procedures in the Registrar's office. The evidence abundantly shows that some of the white registrants now on the rolls received help in the filling out of their application forms and constitutional test cards. It is true that either the Registrar or her Deputy also helped in the registration of some of the Negro applicants, namely, Junius Tate, Reverend Henry Hardy, Norma Cosse, Mary Alice Harvey and August Tinson, all of whom are now registered to vote. The similarity of answers on the constitutional test form cards, especially those shown in the display furnished the court by plaintiff's counsel for the period October 4–7, 1960, shows conclusively that all of the 55 applicants in the display were either assisted in taking the test or provided with the written answers for them to copy. It is equally true that several other white witnesses were assisted in their registration.[7] Defendant Registrar contradicts this evidence with white witnesses who testified that they were registered without assistance by the Registrar or her Deputy. Though the evidence is in conflict, we have no doubt that a number of white registrants were aided in completing the application forms and taking the constitutional test. Under the prior regime of Giordano, as Registrar, and particularly prior to 1954, the then Registrar maintained no regular office or hours for registration of applicants. The handwriting expert of plaintiff identified a number of application forms of registrants filled out during that period which were in the handwriting of one person indicating that even the application forms in the times eight or more years ago were in some instances filled out by someone other than the applicant. But the Giordano excesses have long since ceased to exist and have not existed under the defendant Registrar, Miss Fox. She has always maintained an office with regular office hours. With the exception of the irregularities under Deputy Registrar Hingle who was employed only two months and who undoubtedly helped to fill out application forms for white registrants, the forms are now and have been for many years filled out by the applicants, themselves, both white and Negro.

The Registrar, Miss Fox, in her written briefs and response to plaintiff's proposed decree, states that the new objective citizenship test which now has supplanted the difficult constitutional interpretation test "will be administered without discrimination" and that she "will perform the duties imposed upon her in a conscientious and nondiscriminatory manner." She maintains that her office procedures have been improved and states that "changes have been made" and that "defendants in instant case have evidenced a willingness and desire to do the right thing at all times in accordance with Louisiana law"; that "considerable changes have been made to insure fair treatment of all"; "there has been tremendous improvement and undoubtedly there will be further improvement to insure that all are treated equally and fairly, improvements to guarantee that none can ever complain."

The evidence of the witness Lambert now indicates that at least since 1961 constitutional test forms were evenly distributed where in the past white applicants were apparently given the easier forms to answer, particularly Forms 2 and 8. Of course, the constitutional interpretation test in Plaquemines Parish is now moot, and future applicants will no longer have to contend with it.

Pending this suit we find it necessary to grant the motion for a preliminary injunction to insure that defendants will not engage in any act or practice which involves or results in distinctions based on race or color in the registration or voting processes in Plaquemines Parish, Louisiana. However,

---

**7.** See testimony of Robert Norred, Amanda Mackey, Anthony P. Arnona, Charles Albert Gieseler, Herbert J. Crochet, Annie E. Buras, Catherine Ruth Buras, Henry C. Wall, James Albert Bauman and Lillie Mae Bauman.

34

we are not justified under the evidence or the law in ordering, as requested by plaintiff, the registration of all Negro citizens of Plaquemines Parish over the age of 21 who have the necessary qualifications and none of the disqualifications for a person to register, without requiring that applicants present themselves for consideration and compliance with the applicable Louisiana registration laws. This means that the application form must be correctly filled out without assistance. It is not an information form only—it is a literacy test—and it is simple enough for even the unsophisticated citizen to complete if he can read and write. Likewise, the citizenship test now required by the new Louisiana statute is a much more reasonable test than the former constitutional interpretation test which the Negro citizens failed. The biggest barrier to successful registration by Negro applicants, the constitutional interpretation test, has now been removed and under the preliminary injunction which we are issuing the · defendants are enjoined against discrimination because of race or color in the registration processes in Plaquemines Parish. All of the remaining 37 named Negro citizens heretofore rejected shall be notified by the Registrar within fifteen days of this decree that they may again present themselves for registration in accordance with this mandate. This is therefore substantial relief to plaintiff and should be sufficient under the circumstances to guarantee to all persons in Plaquemines Parish, regardless of race or color, a full opportunity to register and vote without discrimination. Our action here is carefully designed to provide to Negro citizens of Plaquemines the greatest protection and safeguard of their right to register and vote, while maintaining as far as is consistent with the requirements of the Fifteenth and Fourteenth Amendments, the delicate balance between state and federal relations. Registration is a state function; it can best be carried out by the proper state official. A decent respect for the rights of all citizens, white and

Negro, is necessary, however. It must be maintained. Our injunction will insure it. The Registrar's protestations that she is now acting in good faith and will continue to do so under the new registration procedures will be tested. There is a ray of hope that conditions will improve. If good faith registration is now provided, the remedy we have granted can subsequently be removed.

■ In order to insure proper compliance with our order the defendants are directed to file monthly reports with the Clerk of this court reflecting the name, address and race of each applicant for registration, the disposition of his application and, if rejected, the reason therefor.

After a satisfactory trial period, if defendants feel that this requirement is burdensome and the injunction is then unnecessary, they may make a proper showing to the court on the hearing of the merits of this suit that the conduct of their office since the handing down of this injunction has been without discrimination to applicants because of race or color, and the court will then determine the matter on the basis of the evidence.

■ The State of Louisiana, defendant herein, attacks the constitutionality of Section 601(b) of the Civil Rights Act of 1960 (now contained in the last sentence of 42 U.S.C.A. § 1971(c)) which authorizes suit against the state as a party defendant if there has been any deprivation of a right or privilege under this section by any official of a state or subdivision thereof. The United States Supreme Court in United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed. 2d 524 (1960), held that the Act was not unconstitutional. The Court also said in said case (p. 25, 80 S.Ct. p. 525), " * * * it is enough to say that the conduct charged—discrimination by state officials, within the course of their official duties, against the voting rights of United States citizens, on grounds of race or color—is certainly, as 'state action' and the clearest form of it, subject to the

ban of that Amendment [Fifteenth], and that legislation designed to deal with such discrimination is 'appropriate legislation' under it. It makes no difference that the discrimination in question, if state action, is also violative of state law." The Court further said, "We think this Court has already made it clear that it follows from this that Congress has the power to provide for the correction of the constitutional violations of every such official without regard to the presence of other authority in the State that might possibly revise their actions." On another issue the constitutionality of this section having been assailed by the State of Louisiana was declared constitutional in United States v. Manning, W.D.La., 1962, 206 F.Supp. 623. See also State of Alabama v. United States, supra. The plea of unconstitutionality is therefore rejected.

### DECREE

Pursuant to the Findings of Fact and Conclusions of Law contained in the opinion of the court entered this day,

IT IS THE ORDER, JUDGMENT AND DECREE OF THIS COURT that the State of Louisiana, Mary Ethel Fox, Registrar of Voters of Plaquemines Parish, Louisiana, and Louis L. Lassus, Deputy Registrar of Voters, their deputies, agents, officers, employees, successors, and all persons in active concert or participation with them, be and each is hereby enjoined by preliminary injunction, from and after this decree, during the pendency of this case, from:

1. Engaging in any act or practice which involves or results in distinctions based on race or color in the registration or voting processes in Plaquemines Parish, Louisiana.

2. Assisting applicants in completing the filling out of their application and/or test forms without giving the same aid and assistance to Negro applicants.

3. Grading or rating the application and test cards of Negro applicants in any way different from that of other applicants who may apply for registration, having due regard for the requirements of Louisiana constitutional and statutory provisions relating to voter registration.

4. Failing to apply equal standards to all applicants, including Negro applicants, in processing and judging who has passed or failed to pass the tests leading to registration.

5. Administering the qualification tests to Negroes in Plaquemines Parish, Louisiana, in any way different from the manner in which those tests are administered to other applicants for registration.

6. Denying to any Negro citizen of Plaquemines Parish, Louisiana, for reasons of race or color, any of his rights under the laws of the State of Louisiana or the United States pertaining to his right to register to vote in said parish.

7. Failing to accord any Negro citizen of Plaquemines Parish, Louisiana, in a fair, impartial and nondiscriminatory manner, each and every right such citizen has or may have under the registration laws of the State of Louisiana and the lawful resolutions and regulations of the Louisiana Board of Registration.

IT IS FURTHER ORDERED that each of the named Negro citizens in plaintiff's motion for preliminary injunction not now registered to vote, be notified by the Registrar of Voters not later than fifteen days from date of service of this decree on defendants, that they may present themselves as applicants for registration for processing and judging of their tests in conformity with this decree.

IT IS FURTHER ORDERED that defendants file monthly reports with the Clerk of this court reflecting the name, address, and race of each applicant for registration, the disposition of his application and, if rejected, the reason therefor.

IT IS THE FURTHER ORDER, JUDGMENT AND DECREE OF THIS COURT that the defendants shall until further order of this court make the

voter registration books and records of Plaquemines Parish, Louisiana, available for inspection and copying by the plaintiff at any and all reasonable times at the office of the Registrar of Voters of Plaquemines Parish.

This court retains jurisdiction of this cause for the purpose of issuing any and all additional orders herein that may, in its judgment, become necessary or appropriate for the purpose of modifying and/or enforcing this decree.

IT IS ORDERED that the costs incurred in this proceeding be and they are hereby taxed against the defendants, for which execution may issue.