UNITED STATES of America,
Appellant,

v.

Mary Ethel FOX, Registrar of Voters,
Plaquemines Parish, Louisiana,
et al., Appellees.

No. 20398.

United States Court of Appeals
Fifth Circuit.

July 21, 1964.

Harold H. Greene, St. John Barrett, Attys., Dept. of Justice, Washington, D. C. (Burke Marshall, Asst. Atty. Gen., Louis C. Lacour, U. S. Atty., David Rubin, Atty., Dept. of Justice, Washington, D. C.), on the brief for appellant.

Sidney W. Provensal, Jr., New Orleans, La., for appellees.

Before RIVES and JONES, Circuit Judges, and BOOTLE, District Judge.

JONES, Circuit Judge.

The United States, alleging that Negro citizens of Plaquemines Parish, Louisiana, were being deprived of voting rights secured by Federal statute,[1] brought an action against Mary Ethel Fox, the Registrar of Voters, Lionel L. Lassus, the Deputy Registrar of Voters of Plaquemines Parish, and against the State of Louisiana, pursuant to congressional au-

thorization,[2] seeking injunctive relief from discrimination against Negroes in voter registrations in Plaquemines Parish, Louisiana.

In the complaint, filed on October 16, 1961, it was alleged that since January 1953, Negroes had been subjected to discrimination by (a) applying different and more stringent procedures and standards in administering the requirement of the Louisiana Constitution and statutes that applicants give a reasonable interpretation of any section of the Constitution of the United States or the State of Louisiana; (b) rejecting Negro applicants for errors or omissions in completing their applications while assisting white applicants in filling out their forms; and (c) refusing to register qualified Negroes. There was a specific averment that discrimination against Negroes had deprived them of their rights to vote, and such deprivation had been pursuant to a plan and practice. The prayer of the complaint sought a finding that the acts and practices as alleged constituted deprivations of rights secured by 42 U.S.C.A. § 1971(a), Note 1, supra, and a finding that such deprivations were pursuant to a pattern and practice. The court was asked to issue a preliminary and permanent injunction against the doing of any act which would deprive any citizen in Plaquemines Parish of the right to register and vote without distinctions based upon race or color, from engaging in any act which would delay, prevent, hinder, or discourage Negro citizens in Plaquemines Parish, on account of their race or color, from ap-

---

1. All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding. 42 U.S.C.A. § 1971(a).

2. Whenever any person has engaged or there are reasonable grounds to believe

that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. In any proceeding hereunder the United States shall be liable for costs the same as a private person. 42 U.S.C.A. § 1971(c).

plying for registration and becoming registered voters, and from applying different and more stringent procedures and standards to Negro applicants than to white applicants. The application of the "freezing" doctrine, so called, was sought by a specific prayer for an order requiring the registration of all Negroes who had applied for registration since January 1953, and who possessed at the time of their applications the qualifications of the least qualified white person who had applied for and had been registered since that time. Answers were filed denying discrimination against Negroes in the administration of the voter registration laws in Plaquemines Parish.

On April 13, 1962, the United States filed a motion for a preliminary injunction and for the finding of a pattern or practice. The motion sought an order, during the pendency of the case, to enjoin the defendants from engaging in any act or practice resulting in distinctions based on race or color in the registration or voting processes in the Parish; and specifically requested the court to order the defendants:

"1. To register as a voter any Negro applicant who possesses the following qualifications and none of the following disqualifications:

   (a) That he is a citizen not less than twenty-one years of age;

   (b) That he has been a resident of Louisiana for one year, of Plaquemines Parish for six months, and of the precinct in which he offers to register as a voter for three months next preceding any election.

   (c) That he possesses the necessary qualifications regarding character and citizenship, as demonstrated by his willingness to take and sign the oath and affidavit prescribed by Louisiana law, and

   (d) If the applicant did not meet the foregoing qualifications as of January 18, 1955, that he is also able to read and write as shown by his making written application in his own hand.

"2. To point out to each Negro applicant any answers, errors or omissions on his application form, which, if uncorrected or uncompleted, will disqualify him, and to permit him to correct or complete the form.

"3. To cease requiring any Negro applicant to take or pass the so-called 'constitutional interpretation test' as a prerequisite to qualifying as a voter.

"4. To cease using the application form as an examination or test for Negro applicants, and to use such application only as an information sheet for obtaining data relating to the Negro applicant's qualifications, as such form has been and is being used in registering white applicants.

"5. To place on the current registration rolls of Plaquemines Parish and all official copies thereof, the names of the following Negro citizens of Plaquemines Parish: [Here are listed 41 names.]

"6. To file monthly reports with the Clerk of Court reflecting the name, address, and race of each applicant for registration, the disposition of his application, and, if rejected, the reason therefor."

In the hearing, held on May 1, 2, and 3, 1962, the testimony of witnesses was taken, depositions were received and a large number of exhibits were admitted in evidence. The findings, conclusions and order were incorporated in its opinion of November 2, 1962. United States v. Fox, D.C., 211 F.Supp. 25. The district court pointed out that in 1962 it was

provided both by a statute[3] and by constitutional amendment[4] that the State Board of Registration should prepare and issue an objective written test for citizenship to determine that applicants for registration understand the duties and obligations of citizenship under a Republican form of government, and such test is to be administered to all applicants. We think that these implement and supplement the preexisting provisions and do not operate as an implied repeal of the constitutional[5] and statutory[6] sections which permit, if they do not require, the use of the constitutional interpretation test. This test, it seems, has been discontinued in Plaquemines Parish but, of course, could be resumed without any violation of the law of Louisiana.

The district court, reviewing the evidence to some extent, held that "Much greater and more sufficient evidence is necessary, however, in our opinion, to justify a finding of a pattern or practice of discrimination and the evidence is insufficient here to permit such a holding." 211 F.Supp. 25, 32.

The court entered a preliminary injunction, during the pendency of the case, enjoining the defendants from discriminating against Negro applicants for registration. The district court declined to order the registration of the 37 named Negroes[7] whose registration had been specifically sought by the United States, which claimed they were qualified and wrongfully refused registration. However, the district court directed that each of these citizens should be notified by the Registrar that they may present themselves as applicants for registration for processing and judging of their tests in conformity with the decree. The defendants were ordered to file monthly reports with the court showing the name, address and race of each applicant for registration, the disposition of his application and if rejected, the reason therefor.

█ █ )The United States has appealed. Apparently it is not dissatisfied with the operative portions of the court's injunctive order. Its discontent is with the refusal of the court to go further. It specifies two errors, first, in the finding that a pattern or practice of discrimination had not been established, and second, in the refusal of the court to order the registration of Negro applicants who meet the standards which were applied to white applicants prior to the 1962 amendments and who, at the time of those amendments, satisfied the age and residence requirements of Louisiana law.[8] The two specifications of error are entwined. Only if a pattern or practice is found is the court empowered to declare persons entitled to vote who have been deprived of voting rights on account of race or color.[9] So also, if a pattern or practice of discrimination is found, the

---

3. Acts 1962, No. 62, LSA–Rev.Stat. § 18:-191.

4. LSA–Const. Art. 8, Sec. 18.

5. La.Const. Art. 8, Sec. 1(d).

6. LSA–Rev.Stat. § 18.36.

7. Four of the 41 had been registered after the suit was instituted.

8. By a footnote in its brief the United States disclaims any challenge on its part of the failure of the district court to order the registration of those named in its motion for a preliminary injunction.

9. In any proceeding instituted pursuant to subsection (c) of this section in the event the court finds that any person has been deprived on account of race or color of any right or privilege secured by subsection (a) of this section, the court shall upon request of the Attorney General and after each party has been given notice and the opportunity to be heard make a finding whether such deprivation was or is pursuant to a pattern or practice. If the court finds such pattern or practice, any person of such race or color resident within the affected area shall, for one year and thereafter until the court subsequently finds that such pattern or practice has ceased, be entitled, upon his application therefor, to an order declaring him qualified to vote, upon proof that at any election or elections (1) he is qualified under State law to vote, and (2) he has since such finding by the court been (a) deprived of or denied under color of law the opportunity to register to vote or otherwise to qualify to vote, or (b) found not qualified to vote by any person acting under color of law. Such order

applicants who have been subjected to discrimination shall be entitled to an order declaring them entitled to vote.

Although the district court determined that the evidence was not sufficient to justify a finding of a pattern or practice of discrimination, it concluded that the evidence was such as to make necessary a preliminary injunction against engaging in acts or practices of discrimination. The district court recognized the principle, which this Court has several times stated,[10] that evidence of a pattern or practice may go back many years, and such evidence was received over the objection of the Registrar. It is apparent from a reading of the record, and we think it is disclosed by the district court's opinion, that there has been racial discrimination by the Registrar of Voters, Plaquemines Parish, going back many years and continuing until the time of the commencement of the suit. These acts of discrimination have differed in kind and degree with the passing of the years, the substitution of one officer for another, the changes in office personnel, and the repeal of one statute and the enactment of another. In the opinion of the district court it is noted that "The Registrar, Miss Fox, in her written briefs and response to plaintiff's proposed decree, * * * maintains that her office procedures have been improved and states that 'changes have been made' and that * * * 'there has been tremendous improvement and undoubtedly there will be further improvement to insure that all are treated equally and fairly

* * *.' " 211 F.Supp. 25, 33. As we read the foregoing we cannot avoid the impression that the Registrar is conscious of the fact that there was a necessity for improvements, both those made and those to be made, in order to insure equal and fair treatment for those Negroes who desire to register and vote in the Parish.

This Court has recently said that when the District Court makes a finding that no pattern or practice of discrimination existed, it is the obligation of the Court of Appeals to pass upon the correctness of that finding.[11] The case in which this was held was on appeal from a final judgment. Whether such an obligation exists where, as here, the appeal is from the denial of relief by a preliminary injunction, may be doubted. Without detailing the facts as shown by the testimony and documentary proof, we say that it is the opinion of the Court that the evidence in the record is such that, unless countervailing proof is made on final hearing, a finding of pattern and practice of discrimination would be required.

We again comment that this is not an appeal from a final judgment. Rather it is from the refusal to grant the relief sought on an application for a preliminary injunction. Since the district court decided that a pattern or practice of discrimination was not established by the evidence,[12] we think the district court should, in the first instance, determine on final hearing rather than on an application for a preliminary injunction[13] whether the freezing principle[14]

shall be effective as to any election held within the longest period for which such applicant could have been registered or otherwise qualified under State law at which the applicant's qualifications would under State law entitle him to vote. 42 U.S.C.A. § 1971(e).

10. United States v. Lynd, 5th Cir. 1963, 321 F.2d 26, cert. den. 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416; United States v. Dogan, 5th Cir. 1963, 314 F.2d 767; Kennedy v. Lynd, 5th Cir. 1962, 306 F.2d 222, cert. den. 371 U.S. 952, 83 S.Ct. 507, 9 L.Ed.2d 500; Alabama v. United States, 5th Cir. 1962, 304 F.2d 583, aff'd, 371 U.S. 37, 86 S.Ct. 145, 9 L.Ed.2d 112.

11. United States v. Ramsey, 5th Cir. 1964, on rehearing, 331 F.2d 824.

12. A conclusion regarded by the Court as incorrect.

13. United States v. Ramsey, on rehearing, 5th Cir. 1964, 331 F.2d 824. Cf. United States v. Duke, 5th Cir. 1964, 332 F.2d 759.

14. The principle of freezing has been discussed in United States v. Duke, 5th Cir. 1964, 332 F.2d 759, United States v. Ramsey, dissenting opinion, 5th Cir. 1964, 331 F.2d 824; United States v. Atkins, 5th Cir. 1963, 323 F.2d 733; United States v. Dogan, 5th Cir. 1963, 314 F.

should be applied. In reaching this conclusion we do not intend to hold or to indicate an opinion that there may not be cases where, upon a finding of a pattern or practice of discrimination, the court would be under a duty to apply the freezing principle upon an application for a preliminary injunction. We only say that under the facts of this particular situation, as was held in Ramsey on rehearing, "the question of further relief should be first ruled on by the District Court."

 The Registrar and the State assert that error was committed by the admission in evidence of depositions and unauthenticated statistics. They also complain of the admission of proof of discrimination by the predecessors in office of the Registrar. Not having appealed, these questions are not properly brought before us by the appellees. As to the first of these contentions it need only be said that the hearing, at which the challenged evidence was received, was on an application for a preliminary injunction; not on final hearing. As to the second of these complaints, it can be observed that the admissibility of evidence of predecessors' conduct has been approved. United States v. Atkins, 5th Cir. 1963, 323 F.2d 733. The appellees have moved to amend the order so as to relieve them of the costs of the proceeding which have been taxed against them by the district court. They urge that "all of the requests of plaintiff were rejected except that defendant was told not to discriminate in the future," and hence the dissatisfied appellant should bear the costs. If this question can be raised in this manner, which we doubt, we would say that the order was proper, in view of the court's finding that an injunction was necessary to prevent discrimination, and in view of our disagreement with the district court's finding on pattern and practice. However, the matter of costs can be reviewed in its entirety on final hearing.

There is not now any reason why this case should not move with dispatch in the district court toward a final judgment at an early date. Additional evidence may, of course, be offered. The Dogan case, the third Lynd case,[15] the Atkins case, the Ramsey case, and the Duke case, have all been decided since the entry of the order here on appeal, and the principles they announce will serve as a guide in the trial and decision of the cause.

We find no basis for putting the district court in error for its refusal to apply the freezing principle on the application for a preliminary injunction. Therefore the judgment from which the appeal is taken is

Affirmed.

---

2d 767; United States v. Louisiana, E. D.La.1963, 225 F.Supp. 353.

15. United States v. Lynd, 5th Cir.1963, 321 F.2d 26.