GULOTTA, Judge.
This is a mandamus proceeding brought by plaintiffs against the Registrar of Voters to compel him to comply with the provisions of LSA-R.S. 18:108o[1], which require that letters be written to persons who voted only absentee for a period of two years and which further require the Registrar to have the voter submit in writing the reasons for such absentee voting. The trial judge issued the mandamus and ordered the defendant to comply with the provisions of the state statute within a rea *852 sonable time. Defendant, in his appeal, avers that he was prevented and prohibited from carrying out the requirements of the statute because its provisions have been superseded by 42 U.S.C.A. § 1971 (the Voting Rights Act of 1965) and 42 U.S.C.A. § 1973, which provide for the appointment of federal examiners who have the right to register persons and to certify their eligibility to vote in all elections. It is the defendant’s contention that he cannot expunge those registered voters from the rolls (in the manner provided under LSA-R.S. 18:1080) when they have been placed on the rolls by the federal examiners. To do so, the defendant argues, would be in violation of the federal laws and would submit him to contempt by the federal court since he would be in violation of the federal injunctions outstanding against him.[2] The defendant seeks to have that part of the state statute, under which the mandamus issued, to be declared unconstitutional contending that were the state act to be applicable and enforceable only against those registered by the state registrar and not applicable to those registered by the federal examiner, equal protection would not be afforded to all persons.
He argues that to apply the Louisiana act only to state registered persons and not also to those federally registered would be discriminatory in nature and a denial of due process of law in violation of Art. 1, § 2, of the Louisiana Constitution and the 14th Amendment, of the United States Constitution.
Plaintiffs, on the other hand, question the right of the registrar to raise the question of the unconstitutionality of a state statute because his duties are ministerial in nature.
Plaintiffs further argue that the provisions of the state statute, i. e., LSA-R.S. 18:1080, are not in contravention of the Federal Voting Rights Act and the mandamus was rightfully issued.
The rule enunciated by the state Supreme Court in Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 546 (1971), supports plaintiffs’ first contention, i. e., that the registrar cannot attack the constitutionality of a state statute. The Court held in that case that the plaintiff in a mandamus proceeding may attack the constitutionality of a statute or ordinance excusing the defendant’s performance. However, the court cautioned by way of footnote at 247 So.2d page 545 that this rule is to be distinguished from the one relating to public officials themselves, i. e., defendants in a mandamus proceeding. When a public official, such as Lyons in the case before us, is respondent in a mandamus proceeding, he cannot as a defense attack the constitutionality of a statute pertaining to his *853 official ditties. This rule is well founded in our jurisprudence. See: State v. Heard, 47 La.Ann. 1679, 18 So. 746 (1895); Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1955); Smith v. Flournoy, 238 La. 432, 115 So.2d 809 (1959).
Irrespective of the foregoing conclusion, we are, nevertheless, compelled to ascertain whether or not the mandamus properly issued and whether or not the Federal Voting Rights Act supersedes the provisions of LSA-R.S. 18:1080.
In the case of Perez v. Rhiddlehoover, 186 So.2d 686 (La.App. 4th Cir. 1966); writ ref’d, an injunction was sought by the District Attorney for Plaquemines Parish to restrain federal voting examiners from being assigned to the Parish pursuant to 42 U.S.C.A. §§ 1971, 1973, and restraining Roy Lyons, Registrar of Voters for Pla-quemines, from registering individuals who did not fulfill state requirements of age and residency. We stated that the Voting Rights Act, as it relates to age, residence, and voter identification requirements, did not supersede the state act. The portion of that opinion, which we find apropos to the present question, is a discussion of the provisions of the Voting Rights Act wherein we concluded that the federal examiners are to act in conformity with the State laws as long as they are consistent with the federal Constitution. It reads at pages 689, 690:
“We pause to emphasize that the plaintiff herein does not assail the constitutionality of the Voting Rights Act of 1965. Instead, he stresses the fact that the qualifications prescribed by state law are not inconsistent but are compatible with the Constitution and laws of the United States. However, his principal complaint is predicated upon the fact that the defendant, Lyons, has acted in contravention of state law, which has not been superseded by the Voting Rights Act, in placing various individuals registered by the federal examiners on the voting rolls of Plaquemines Parish. In substantiation of this contention, he points to Section 9(b) of the Act which reads:
‘ * * * the Commission shall, after consultation with the Attorney General, instruct examiners concerning applicable State law not inconsistent with the Constitution and laws of the United States with respect to (1) the qualifications required for listing, and (2) loss of eligibility to vote.’ (Emphasis added.)
“In addition, Section 7(b) reads:
‘Any person whom the examiner finds, in accordance with instructions received under section 9(b), to have the qualifications prescribed by State law not inconsistent with the Constitution and laws of the United States shall promptly be placed on a list of eligible voters. * * *’ (Emphasis added.)
“The foregoing sections of the Act obviously pronounce that the federal examiners are to register qualified voters in conformity with the voting requirements of state law. The identical conclusion was reached by the Supreme Court of the United States in the very recent case of South Carolina v. Katzenbach7 wherein the organ for the court stated:
‘The examiners who have been appointed are to test the voting qualifications of applicants according to regulations of the Civil Service Commission prescribing times, places, procedures, and forms. §§ 7(a) and 9(b). Any person who meets the voting requirements of state law, insofar as these have not been suspended by the Act, must promptly be placed on a list of eligible voters.’
“We are therefore convinced that nothing contained in the Voting Rights Act of 1965 supercedes the requirements of age, residence, and voter identification prescribed by the law of the State of Louisiana.” (emphasis ours)
Moreover, a reading of the Federal Act with particular reference to specific sections thereof leads us to the conclusion *854 that the Act was not meant to supersede state laws not inconsistent with the Constitution.
The federal Act refers throughout to the applicability of the provisions of state law.
We note the language of 42 U.S.C.A. § 1973e (b) dealing with the placement of eligible voters on official lists:
“Any person whom the examiner finds, in accordance with instructions received under section 1973g (b) of this tile, to have the qualifications prescribed by State law not inconsistent with the Constitution and laws of the United States shall promptly be placed on a list of eligible voters. A challenge to such listing may be made in accordance with section 1973g (a) * * *
“The appropriate State or local election official shall place such names on the official voting list. Any person whose name appears on the examiner’s list shall be entitled and allowed to vote in the election district of his residence unless and until the appropriate election officials shall have been notified that such person has been removed from such list in accordance with subsection (d) of this section: Provided, That no person shall be entitled to vote in any election by virtue of this subchapter unless his name shall have been certified and transmitted on such a list to the offices of the appropriate election officials at least forty-five days prior to such election.” (emphasis ours)
In reference to removal of names from the list by examiners, the language in the act again emphasizes conformity by the examiner with State law. 42 U.S.C.A. § 1973e (d) reads:
“A person whose name appears on such a list shall be removed therefrom by an examiner if (1) such person has been successfully challenged in accordance with the procedure prescribed in section 1973g of this title, or (2) he has been determined by an examiner to have lost his eligibility to vote under State law not inconsistent with the Constitution and the laws of the United States.” (emphasis ours)
Under the Act, the Civil Service Commission sets up rules for removal of names from eligibility lists consistent with state law. 42 U.S.C.A. § 1973g (b) states:
“The times, places, procedures, and form for application and listing pursuant to this subchapter and removals from the eligibility lists shall be prescribed by regulations promulgated by the Civil Service Commission and the Commission shall, after consultation with the Attorney General, instruct examiners concerning applicable State law not inconsistent with the Constitution and laws of the United States with respect to (1) the qualifications required for listing, and (2) loss of eligibility to vote.” (emphasis ours)
The United States Civil Service Commission’s rules concerning removal from voter eligibility list appeared in The Federal Register at page 9861 dated August 7, 1965, Subpart D, § 801.402(c) and listed one of the bases for removal of the names of persons from an eligibility list :
“When the examiner determines that the listed person has lost his eligibility to vote under State law not inconsistant with the Constitution and the laws of the United States and in accordance with the instructions concerning loss of eligibility to vote prescribed by the Commission after consultation with the Attorney General which shall be set out in Appendix D to this part and incorporated in and made a part of this section.” (emphasis ours)
Appendix D referred to, supra, sets out the rules and regulations for loss of eligibility to vote in Louisiana insofar as removal of the person from the state or parish:
“A person loses his eligibility to vote in elections in the State of Louisiana if:
“(1) He is no longer a legal resident of the State of Louisiana or the parish *855 for which he is listed, however the removal from one parish to another does not deprive a person of the right to remain listed in the parish from which he has removed for the purpose of voting for district officers to be elected in a district which includes the parish to which he has removed, or for State officers, whether the parish is in the same district or not, until he has acquired the right to register or be listed and vote for such officers in the parish to which he has removed (the removal of a person from one precinct to another in the same parish does not deprive him of his right to remain listed in the parish from which he has removed until three months after the removal); * * * ” (emphasis ours)
We find plaintiff’s position is strengthened further by the provisions of 42 U.S. C.A. § 1973aa-l(c), (d), (e) and (f) concerning residency requirements for voting in national elections. In drafting these subsections, an effort was apparently made not to supersede apposite state law.
§ 1973aa-l(c) reads:
“No citizen of the United States who is otherwise qualified to vote in any election for President and Vice President shall be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to comply with any dura-tional residency requirement of such State or political subdivision; nor shall any citizen of the United States be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to be physically present in such State or political subdivision at the time of such election, if such citizen shall have complied with the requirements prescribed by the law of such State or political subdivision providing for the casting of absentee ballots in such election.” (emphasis ours)
and § 1973aa-l (d) states:
“For the purposes of this section, each State shall provide by law for the registration or other means of qualification of all duly qualified residents of such State who apply, not later than thirty days immediately prior to any presidential election, for registration or qualification to vote for the choice of electors for President and Vice President or for President and Vice President in such election; and each State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor not later than seven days immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election.” (emphasis ours)
and § 1973aa-l(e) provides:
“If any citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any election for President and Vice President has begun residence in such State or political subdivision after the thirtieth day next preceding such election and, for that reason, does not satisfy the registration requirements of such State or political subdivision he shall be allowed to vote for the choice of electors for President and Vice President, or for President and Vice President, in such election, (1) in person in the State or political subdivision in which he resided immediately prior to his removal if he had satisfied, as of the date of his change of residence, the requirements to vote in that State or political subdivision, or (2) by absentee ballot in the State or political subdivision in which he resided immediately prior to his removal if he satisfies, but for his nonresident status and *856 the reason for his absence, the requirements for absentee voting in that State or political subdivision.’’ (emphasis ours)
and § 1973aa-l (f) reads:
“No citizen of the United States who is otherwise qualified to vote by absentee ballot in any State or political subdivision in any election for President and Vice President shall be denied the right to vote for the choice of electors for President and Vice President, or for President and Vice President, in such election because of any requirement of registration that does not include a provision for absentee registration.” (emphasis ours)
We find nothing in these provisions which would suggest conflict between LSA-R.S. 18:1080 and the Federal Voting Rights Act. To the contrary, the provisions of the state Act fulfill the purposes of the Federal Statute. It would seem the purpose of LSA-R.S. 18:1080 is to obviate any invitation to remain registered to vote in a parish after having removed oneself from one to another and to insure that a person voting absentee resides and is domiciled in the parish and is qualified to exercise that right.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.
REGAN and SAMUEL, JJ., concurring.

. LSA-R.S. 18:1080 reads:
“If, while canvassing the rolls as required in R.S. 18:131, or while inspecting the voting records of voters as required in R.S. 18 :240, the registrar of voters shall find that a certain voter is posted as voting only absentee for a period of two years, it shall be the duty of the registrar to address a letter to that voter, asking the voter to submit in writing the reason for such continued absentee balloting. Unless the voter makes an immediate and satisfactory reply, meeting the constitutional requirements contained in Article VIII, Section 11 of the Constitution of 1921 as amended as to gain or loss of residence, the registrar shall cancel the registration of that voter by the procedure set out by the law governing cancellation.”

. United States v. Fox, 211 F.Supp. 25 (E.D.La.1962) was an action for a preliminary and permanent injunction against the then Registrar and Deputy Registrar of Voters of Plaquemines Parish and the State of Louisiana to prevent defendants from discrimination in the registration procedures against Negroes qualified to vote. Although the court granted a preliminary injunction, it did not find a definite pattern of discrimination. We fail, however, to see how the injunction in the Fox case would affect or encompass the mandamus sought in the present case which deals with absentee voting and not racial discrimination.
In United States v. Louisiana, C.A. 2866 (E.D.La.1969), Roy Lyons, Registrar of Voters for Plaquemines Parish, sought removal of federal examiners and in the alternative that the court order the federal examiners to cease from listing persons as eligible to vote at times state law requires closing of the Registrar’s office and that the examiners be required to gather certain data for identification of registrants. In denying the relief sought, the court stated that the procedure to be followed in terminating the listing procedures with respect to examiners appointed pursuant to the Voting Rights Act is contained therein and had not been followed in this instance. The court held that it did not have jurisdiction insofar as the alternative relief sought. Clearly, we fail to see how the determination by that court is relevant to the question before us in a mandamus proceeding to prevent abuse of the absentee voting procedure.