Chester SMITH, Plaintiff,

v.

STATE OF ARKANSAS et al.,
Defendants.

No. LR–74–C–255.

United States District Court,
E. D. Arkansas, W. D.

Oct. 25, 1974.

Royce Griffin, Owens, McHaney &
McHaney, Little Rock, Ark., for plaintiff.

Lonnie A. Powers, Deputy Atty. Gen.,
State of Arkansas, Little Rock, Ark.,
Dan Orr, Ash Flat, Ark., for defendants.

Before STEPHENSON, Circuit Judge, and EISELE and HENLEY, District Judges.

## MEMORANDUM OPINION

EISELE, District Judge.

Plaintiff Chester Smith filed a pro se complaint on August 20, 1974, alleging that he is illiterate and unable to comply with the Arkansas law (specifically Ark.Stat.Ann. § 3–717[b]) governing the casting of and counting of write-in votes. He challenges the constitutionality of the Arkansas statutes and asks an injunction commanding the Sharp County Board of Election Commissioners to count his ballot. A three-judge District Court was convened. Mr. Royce O. Griffin of the bar of this Court was appointed to represent the plaintiff.

The complaint has been twice amended, but the principal allegations remain the same: that the Arkansas Election Code, specifically Ark.Stat.Ann. §§ 3–717 (b) and 3–713,[1] as interpreted and applied, unconstitutionally restrict the voting rights of the illiterate, the semi-literate, and those unable, for any reason, to write. The complaint, as amended, seeks relief on behalf of a class described as "Arkansas voters who, because of insufficient education or physical handicap, are unable to comply with the statute regarding the counting of write-in votes". It does not seek to have any of the defendants named as representatives of a class of all county election officials.

A hearing was held in this case (it having been consolidated for purposes of hearing with Weston v. Bumpers, et al., No. B–74–C–42) on Tuesday, October 22, 1974. After the close of the evidence and the arguments of counsel, the case was taken under submission.

As the Court indicated at the opening of the hearing, plaintiff will be allowed to maintain this suit as a class action. He will be permitted, pursuant to Rules 23(a) and (b)(2), to act as the representative of a class defined, as he requests, as "Arkansas voters who, because of insufficient education or physical handicap, are unable to comply with the statute regarding the counting of write-in votes".

 As to the merits of the plaintiff's case (the alleged unconstitutionality of Ark.Stats. §§ 3–713 and 3–717[b]) the Court will look first at § 3–717(b). The second sentence of that section (". . . In addition, no write-in vote shall be counted unless the name written on the ballot shall be the full name of the person for whom the vote is cast, as the same appears on the

---

[1] "3–713. Assistance to voters—Duty of Judges.—A voter who informs the judges that he cannot read or write, or for any reason is unable to mark his ballot, may have the assistance of his spouse or two [2] judges in the preparation of his ballot. If the judges are requested to assist the voter, the ballot must be prepared in the following manner:

"(a) One [1] judge representing each the majority and the minority parties shall assist the voter. Provided, however, in primaries, if majority and minority judges are appointed by the County Committee, one [1] judge representing each the majority and minority members on the County Committee shall assist the voter.

"(b) One of the judges, in the presence of the other judge, shall read to the voter the names of the respective candidates as they appear on the ballot.

"(c) The voter must then state for which candidate he wishes to vote.

"(d) One of the judges, in the presence of all, shall mark the ballot as the voter wishes to vote it.

"(e) No judge or clerk shall express any preference for any candidate or measure or in any manner whatsoever attempt to influence any voter."

"3–717. Procedures in counting ballots.— In counting the ballots, the following procedures will be followed:

"(b) No write-in vote in any election in this State may be counted unless the name of the write-in candidate shall have been written on the ballot in the handwriting of the person casting the vote. In addition, no write-in vote shall be counted unless the name written on the ballot shall be the full name of the person for whom the vote is cast, as the same appears on the Voter Registration Affidavit of the person for whom the vote is cast."

Voter Registration Affidavit of the person for whom the vote is cast.") is, in the opinion of the Court, unconstitutional on its face as an unreasonable and unjustified burden on the exercise of the franchise by anyone wishing to vote for a write-in candidate.

Voting is a fundamental right, and attempts by the State to restrict or burden it must be closely scrutinized. Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). The State has offered no rational grounds for this hypertechnical requirement that the "full name" of any write-in candidate must appear on a ballot in exactly the same form as it appears on his voter registration affidavit[2] except the obvious need to be certain for whom a vote was cast.[3] It is hardly necessary to state that, if there is a question as to the intent of the voter, the judges of the election, in the first instance, are those to decide that question.

■ As a consequence of the Court's holding, any ballot which adequately indicates the voter's intent to cast his ballot for a qualified write-in candidate shall, if otherwise valid, be counted.

■■ While the Court expressed at oral argument some doubts as to the constitutionality of the first sentence of § 3–717(b) ("No write-in vote in any election in this State may be counted unless the name of the write-in candidate shall have been written on the ballot in the handwriting of the person casting the vote"), it has decided on the basis of one of the State's constructions of that sentence referred to during oral argument, (to wit, that, properly interpreted, it applies only to those who *can* handwrite and, therefore, *not* to the plaintiff or the class he represents) that said provision is constitutional. So far as handicapped persons are concerned, the handwriting requirement must be construed as including handwriting of a spouse or of one of the election officials who may be assisting the voter. Since the first sentence of § 3–717(b) is clearly severable from the second sentence, that first sentence will remain in effect and control as to those voters who are able to adequately express their voting intentions by the use of their own handwriting. Other voters who cannot write, or cannot write well enough to express their voting intent, will have the benefit of the first sentence of Ark.Stat.Ann. § 3–713, the assistance to voters statute, which we hold applies to those voting for write-in candidates as well as those voting for other candidates.[4]

The Court reaches this decision by construing the first sentence of § 3–713 ("A voter who informs the judges that he cannot read or write, or for any reason is unable to mark his ballot, may have the assistance of his spouse or two [2] judges in the preparation of his ballot.") as the general expression of the legislature's intent and by construing the following language of that section as controlling only with respect to the particular instance of voter assistance referred to, that is, in connection with the marking of ballots for candidates whose names appear thereon. The Court is of

2. It should also be noted that since Section 6 of Amendment No. 51 to the Arkansas Constitution permits a voter to register using his given name, middle name or middle initial, it may be impossible for the voter to comply with both the "full name" requirement and the requirement that the name be "as the same [shall appear] on the Voter Registration Affidavit".

3. Given the elaborate procedures necessary to qualify as a write-in candidate in Arkansas, *see* Ark.Stat.Ann. § 3–614, (the Court notes that only one individual has qualified as a write-in candidate in a state-wide race in the general election to be held November 5), there will very rarely be opportunities for confusion as to which write-in candidate a voter wishes to cast his ballot for.

4. It may be noted that the construction we have adopted is consistent with what has been stated to be the legislative intent to bar voting for write-in candidates by use of gummed stickers, and we would emphasize that nothing we have said is intended to authorize voting by use of such stickers.

the opinion that the statute permits assistance to be given to a voter who cannot, say, operate a voting machine—either because he cannot read the candidates' names or because he is physically incapable of flipping the levers [5]—and that it also allows assistance to be given to a voter who wishes to vote for a write-in candidate but is unable to do so without such assistance.

■ Plaintiff Smith challenges the assistance statute on the grounds that it denies single (unmarried) people the equal protection of the laws because it allows a voter to be assisted either by his spouse or by two election judges. Smith argues that since he is not married he (and others similarly situated) are forced to sacrifice the secrecy of their ballots in order to gain assistance. The Court is impressed by Mr. Smith's argument; however, it recognizes the danger of abuses any voter assistance statute presents and believes the requirement, while possibly more strict than one it might itself impose, is within the legislative power of the State. While it is true that married people are given an alternative not available to the single individual, the Court does not believe the classification unreasonable. The legislature, the Court feels confident, was anxious to ensure that handicapped or illiterate voters had an opportunity to vote *their own* convictions, and it imposed restrictions on those who could assist them in order to prevent the unscrupulous partisan from using or taking advantage of the illiterate or handicapped voter. The Court believes, too, that the general safeguards outlined in § 3–713, which while they are written in terms of assistance in marking a paper ballot for candidates whose names appear thereon, will be applied as a guide as to the proper manner and method of giving assistance to those using voting machines or to those wishing to vote for a write-in candidate.[6] The important goal of protecting the integrity of the franchise provides the compelling state interest which justifies this moderate restriction on the secrecy of the handicapped or illiterate voter's ballot. United States v. Executive Committee of Democratic Party of Greene County, Alabama, 254 F.Supp. 543 (N.D. and S.D.Ala. 1966). Thus, while the married voter has one alternative not available to the single voter, the legislature's motive—to ensure that the voter is not imposed upon by the person aiding him—justifies the differing treatment of the married and the unmarried voter.

Since the election is fast approaching and many of those who will be called upon to interpret the statutes we have construed today—i. e., the judges and clerks at each polling place throughout the state—are not defendants in this case, we direct the State Election Commission, all of whose members are before us, to circulate this opinion to all county and state election officials, together with whatever explanations and instructions, consistent herewith, they may deem advisable.

The Court wishes to commend plaintiff's counsel who served ably upon short notice and without compensation.

---

5. Ark.Stat.Ann. § 3–1219 provides as follows: "The provisions of election laws relating to assistance . . . shall also apply where voting machines are used."

6. The Court further notes several provisions of Arkansas law which require oaths of election officials and provide sanctions for any attempt to influence voters. *See, e. g.,* Ark.Stat.Ann. §§ 3–704; 3–1104(s); 3–1510; 3–1526.