The Honorable William L. "Bill" Walker, Jr. State Representative P. O. Box 1609 Little Rock, Arkansas 72203
Dear Representative Walker:
This is in response to your request for an opinion regarding Act 843 of 1987. You have asked, specifically, for an opinion on the constitutionality of this Act.
Act 843 amends Sections 4, 5, 7, and 10 of Article 9 of Act 465 of 1969, as amended [codified at Ark. Stat. Ann. 3-904, 3-905, 3-907 and 3-910 (Cum. Supp. 1985)]. Section 1 of Act 843 relates to absentee ballot applications and provides in pertinent part as follows:
 SECTION 1. Section 4 of Article 9 of Act 465 of 1969, as amended, the same being Arkansas Statute 3-904, is hereby amended to read as follows:
 "Section 4. (a) Applications for absentee ballots must be signed by the applicant and may be made in one of the following ways, and in no other manner:
 1. For applications submitted using the form prescribed in Article 9, Section 5 of Act 465 as[of] 1969, as amended Arkansas Statute Section 3-905]:
 (i) In person at the office of the County Clerk of the county of residence of the voter.
 (ii) By mail; provided that, applications by mail must be received in the office of the County Clerk of the county of residence of the voter not later than one (1) day before the election for which such application was made. Provided, however, that no ballot shall be mailed to any applicant except in strict compliance with the provisions of Amendment 51 to the Arkansas Constitution.
 (iii) By delivery of the application to the office of the County Clerk of the county of residence of the applicant not later than 4:30 p.m. on the day immediately preceding the day of the election. Delivery may be made only by a person related to the applicant up the third degree of consanguinity (the husband, wife, son, daughter, sister, brother, father, mother, grandparent, grandchild, aunt, uncle, niece, nephew, great-grandparent, or great-grandchild of the applicant), upon proper verification of the signature of the applicant by the County Clerk and validation of the identity of the bearer. The elector may deliver the application to the office of the County Clerk of the county of his or her residence not later than 4:30 p.m. on the day immediately preceding the day of the election.
 (iv) By delivery of the application to the office of the County Clerk of the county of residence of the applicant not later than 1:30 p.m. on the day of the election. Delivery may be made by a person as the authorized agent of the applicant who submits to the County Clerk an affidavit of the administrative head of a hospital or nursing home located in this State that said applicant is a patient in said hospital or nursing home and is thereby unable to vote on said election day at their regular voting place. A copy of the affidavit shall be retained by the County Clerk as an attachment to the application for an absentee ballot.
Section 2 amends the absentee ballot application form consistent with the changes made in Section 1. Section 3 sets forth, inter alia, the materials to be furnished an absentee ballot applicant, consistent with the amendments contained in Sections 1 and 2. And Section 4 specifies the various methods of absentee voting, stating in pertinent part:
 Absentee voting may be accomplished in one (1) of three (3) following methods, and in no other manner:
 . . . (c) By delivery of the ballot to the office of the County Clerk of the county of residence of the voter not later than 7:30 p.m. on election day by:
 (1) a person related to the voter up to the third degree of consanguinity (the husband, wife, son, daughter, sister, brother, father, mother, grandparent, grandchild, aunt, uncle, niece, nephew, great-grandparent, or great-grandchild of the voter; or (3) the authorized agent of the absentee voter who is medically unable to vote at the regular place of voting; upon proper verification of the signature of the voter by the County Clerk and validation of the identity of the bearer. Provided, no person may deliver absentee ballots to the Clerk's office for more than two (2) persons. The voter may deliver the ballot to the office of the County clerk of the county of his or her residence not later than 5:30 p.m. on the day immediately preceding the date of the election.
As the foregoing indicates, absentee ballot applications may be delivered only by "a person related to the applicant up to the third degree of consanguinity. . . ." This applies to delivery of the ballot as well. Act 465 of 1969, as amended, formerly provided in section 4 of Article 9 for delivery of applications by the husband, wife, son, daughter, sister, brother, father or mother of the applicant, or any person designated in writing by the applicant. . . ." See Ark. Stat. Ann. 3-904(a)(1)(iii) (Cum. Supp. 1985). And 3-910 contained this same language with respect to delivery of the ballot.
Act 843 also adds a new provision to Sections 4 and 10 of Article 9 of Act 465, appearing as Section 4(a)(1)(iv) and Section 10(c)(2) that applies specifically to patients in a hospital or nursing home. These persons may authorize an agent to deliver the ballot application and the ballot, but an affidavit of the hospital or nursing home administrative head must be submitted to the effect that the applicant is a patient and thereby unable to vote at the regular voting place. Article 9, Section 10(c) of Act 465 [Ark. Stat. Ann. 3-910(c)] has also been amended to change the limitation on the number of persons for whom one may deliver[y] absentee ballots, from five (5) to two (2).
In response to your inquiry, it must be initially determined whether these provisions run afoul of the federal Voting Rights Act, 42 U.S.C. § 1971 et seq. This Act provides at Section 2 as follows:
 No [v]noting qualification or prerequisite to voting or standard, practice or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote on the account of race or color.
The provisions of Act 843 do not appear to be in direct conflict with these prohibitions. Any challenge based upon the Voting Rights Act would, of course, also have constitutional implications under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The challenge would be based upon alleged negative impact on minorities. If these provisions have the effect of abridging or impairing the rights of minorities, which is a matter of factual proof, they could subsequently be stricken by a federal court. Of course, it cannot be determined at this point whether such proof exists.
It should be noted in this regard that the presentation of such proof, by statistics or otherwise, will effectively shift the burden of proof to the State to show its rationale and purpose in enacting the alleged restrictive laws. It may be successfully argued in that instance that the Act addresses what have been perceived as abuses of the absentee voting system. A Louisiana case, Rousselle v. Lyons, 262 So.2d 850 (La. 1972) may offer some guidance. The court held a Louisiana statute not violative of the Voting Rights Act even though it required letters from voters who had voted absentee for two years stating their reason in writing for voting that way. This was not deemed an impairment of the right to vote.
It may be successfully contended, in response to the argument that Act 843 impairs the ability of a registered voter to cast his or her ballot, that the right to vote is not actually at stake; rather, the claim is based upon an alleged right to apply for and vote an absentee ballot. And it has been stated that absentee voting is a privilege granted electors and not an absentee right. 26 Am.Jur.2d Elections 243. The Arkansas Supreme Court has consistently held, moreover, that provisions relating to the duties of voters in applying for and casting absentee ballots are mandatory, not directory, and must be strictly complied with. Bingamin v. City of Eureka Springs, 241 Ark. 477, 408 S.W.2d 607
(1966). It is my opinion, therefore, that Act 843 will not, as a general matter, be deemed to deny or impair the right to vote. A further determination must be made, however, with respect to other potential Equal Protection arguments. It may be contended that electors having no relatives meeting the Act's specifications, i.e., persons related to the elector up to the third degree of consanguinity, have been set apart from other absentee voters, in contravention of the Equal Protection Clause of the 14th Amendment. The option of delivery by another would not be available to these individuals under the amendments contained in Act 843. Similar Equal Protection arguments advanced by patients in hospitals and/or nursing homes are conceivable since these persons must submit affidavits confirming their status.
Assuming that these individuals form identifiable classes for the purpose of constitutional scrutiny, it must then be determined which test of constitutionality will apply — the "rational basis" test or the "compelling state interest" test. The former "rational basis" test would appear to be appropriate in this instance. Act 843 is not of a discriminatory nature; nothing contained therein signals an invidious attempt to hinder voting on the basis of race or color or other improper basis.
While legitimate arguments may be advanced opposing the distinctions made, these "classifications" will in all likelihood survive scrutiny in light of the State's legitimate interest in insuring the integrity of the election process. The fundamental right to vote has not been restrained, since electors having no relatives within the Act's specifications may vote by mail. Nor does the affidavit requirement imposed on hospital and nursing home patients result in anyone's disenfranchisement. It may be successfully argued that these requirements are reasonably related to a legitimate State end. The presumption of constitutionality attendant to every legislative enactment should also be considered. Cases are legion for the proposition that statutes are presumed constitutional. And it has been stated that all doubt must be resolved in favor of constitutionality. Stone v. State, 254 Ark. 1022, 498 S.W.2d 634 (1973). The Arkansas Supreme Court has stated the following in this regard: ". . .if it is possible for the courts to so construe an act that it will meet the test of constitutionality, they not only may, but should and will, do so. . . . Another way of stating this elementary rule is that every reasonable construction must be resorted to in order to save the statute from unconstitutionality. (Citations omitted.)254 Ark. at 1013.
The case of Smith v. State of Arkansas, 385 F. Supp. 703 (E.D.Ark. 1974) should, finally, be noted in assessing the constitutionality of Act 843. The Court rejected an equal protection challenge to a state statute that provided for the assistance of a voter's spouse or two (2) judges if the voter was unable to read or write. It was argued that the provision denied single people the equal protection of the laws because it forced unmarried persons to sacrifice the secrecy of their ballots in order to gain assistance. 385 F. Supp. at 706. The Court, in rejecting this contention, noted the following:
 The important goal of protecting the integrity of the franchise provides the compelling state interest which justifies this moderate restriction on the secrecy of the handicapped or illiterate voter's ballot. . . . Thus, while the married voter has one alternative not available to the single voter, the legislature's motive — to ensure that the voter is not imposed upon by the person aiding him — justifies the differing treatment of the married and unmarried voter. Id.
It is my opinion, based upon the foregoing, that Act 843 will withstand constitutional scrutiny.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.